**STATE of Oklahoma, ex rel. OKLAHO-
MA BAR ASSOCIATION,
Complainant,**

v.

**Sam C. SULLIVAN, Respondent.**

**No. SCBD 2665.**

Supreme Court of Oklahoma.

Opinion Adopted Oct. 24, 1978.

Decided Jan. 30, 1979.

D. C. Thomas, Oklahoma City, for complainant.

James A. Clark, Ardmore, for respondent.

IRWIN, Justice.

Sam C. Sullivan (respondent) is a former district judge. The Oklahoma Bar Association (Association) commenced disciplinary proceedings against him based upon certain acts allegedly committed by him while serving in the capacity as a district judge.

Honorable Robert Layden, a district judge, was appointed as Trial Authority and public hearings were conducted at the request of respondent. Thereafter, the Trial Authority submitted his Findings of Fact and Conclusions of Law and recommended that respondent be suspended from the practice of law for a period of time not to exceed one year. Briefs have been submitted and the matter is before this court for review.

The record reflects that while respondent was serving as a district judge, proceedings were commenced before the Trial Division of the Court on the Judiciary [1] in which respondent was charged with misconduct in office and violation of the Code of Judicial Conduct. 5 O.S.1971, Ch. 1, App. 4. A trial was conducted and based upon a finding that in several instances respondent's conduct constituted oppression in office, the Trial Division removed him from his office as district judge with disqualification to

hold any judicial office under the State of Oklahoma. The decision of the Trial Division was not appealed and became final.

After the conclusion of proceedings before the Court on the Judiciary, the Association commenced the present proceedings to discipline respondent in his capacity as an attorney. The complaint alleged as grounds for discipline those acts of misconduct found by the Trial Division of the Court on the Judiciary to have been established and to have constituted grounds for his removal as a district judge.[2]

Some of the basic findings by the Trial Authority are:

(1) Respondent arrested and cited for contempt a court bailiff and conducted a hearing on the contempt citation in a capricious manner, and the arrest and citation were unjustified and respondent abused and mistreated the bailiff and the acts were done to frighten and intimidate him. Respondent refused to sign a Court Fund claim for services legally performed by the bailiff and the refusal was illegal, based on personal spite (because bailiff was a "spy" and "not loyal") and beyond the respondent's discretion as a judge;

(2) Respondent heard a motion in a felony case and presided with gross disregard to judicial ethics and was abusive to counsel, used coarse language and displayed partiality;

(3) Respondent, as a judge, on numerous occasions advised defendants in criminal matters that the charge carried a penalty in excess of the statutory maximum;

(4) In a controversy between two individuals, respondent took the role of an advocate for a friend and verbally abused the attorney representing one of the parties for no apparent reason other than personal dislike;

---

1. See Article VII–A, Court on the Judiciary, Oklahoma Constitution; 5 O.S.1971, Ch. 1— App. 7, Rules on the Court on the Judiciary.

2. Early in the course of these proceedings, Association took the position that the factum of misconduct had been conclusively established by the judicial determination of the Trial Division of the Court on the Judiciary as to each of the allegations of the present complaint. The

Trial Authority refused to accept Association's position and required full proof of the allegations. While this aspect of the proceedings has not been presented to the Court for review, the trial authority proceeded correctly as the essential issue presented was whether respondent should be disciplined as an attorney, not whether respondent had violated the Code of Judicial Conduct.

(5) Respondent refused to permit a defendant the right to enter a plea in a misdemeanor case because the defendant did not know his Social Security number;

(6) Respondent threatened a law enforcement office with jail or fine for chewing gum in court, and

(7) Respondent refused to permit the approval of a bond of a defendant charged with a misdemeanor and defendant had to remain in jail over the weekend.

The Trial Authority found that some of the above acts were abusive and oppressive, some were illegal, some were abusive, oppressive and illegal; and respondent knew or should have known that said acts were wrongful; and said acts involve moral turpitude.

Other findings of the Trial Authority are:

(a) Respondent has a good reputation for truth and veracity and is considered by many eminent professional people to be fit to practice law;

(b) None of the acts set forth in the complaint were done by the respondent for financial gain; and

(c) The facts proved in this action indicate that respondent has a disregard for the law and is insensitive to basic legal rights. There is no indication in the record that respondent has ever recognized that any of the actions charged may have been wrongful.

The Trial Authority in its Conclusions of Law found that disciplinary action by the Association against a member who was formerly a judge for misconduct while he was a member of the judiciary does not lie as to matter involving judicial decisions, judicial discretion, misunderstandings of the law, nor to acts of carelessness or negligence *unless* such acts involve moral turpitude. Based upon this finding the Trial Authority found that some of the alleged conduct in the complaint was beyond the scope of the Association's right to censure or impose discipline.

In another Conclusion of Law the Trial Authority found that the basic question in Bar Disciplinary proceedings against a member is the fitness of the member to practice law; and violations of the Code of Professional Responsibility, violations of the law and violations of the Code of Judicial Conduct (where member is a or has been a judge) all demonstrate unfitness to practice law.

■ All of the acts which the Trial Authority found constituted grounds for discipline were committed by the respondent in his official capacity as a district judge. However, neither this nor the fact that respondent has been removed from office as a district judge by the Court on the Judiciary necessarily mean that he may not be disciplined as an attorney for the same conduct because proceedings before the Court on the Judiciary are not exclusive. Art. VII–A, Okl.Const., § 4(d), states in part that proceedings before the Court on the Judiciary, regardless of the result, "shall not bar or prejudice any other proceeding, civil or criminal, authorized by law." By rule, this Court has announced, "that a member of the Bar of this State may not take unto himself any office or position, or shroud himself in any official title, which will place him beyond the power of this Court to keep its roster of attorneys clean." 5 O.S.1971, Ch. 1, App. 1, Art. IX—Jurisdiction. Members of the Association in the past have been disciplined as attorneys for conduct taking place during the member's tenure as a judicial officer. *State, ex rel. Oklahoma Bar Association v. James*, Okl., 463 P.2d 972 (1969); and *State, ex rel. Oklahoma Bar Association v. Tallent*, 299 P.2d 162 (1956); See also *Weston v. Board of Governors of State Bar*, 177 Okl. 467, 61 P.2d 229 (1936).

The conduct forming the basis for the disciplinary proceedings in James and Tallent involved violations of the Criminal Laws of Oklahoma while the attorneys were members of the judiciary, i. e., a solicitation of a bribe in James, and illegally demanding and receiving certain sums of money for issuing and renewing beer licenses in Tallent.

It is evident that in Oklahoma a former judge-member of Association might be

called to account for his conduct as would any other non-judge member of the Association. In addressing the issue in *Weston*, supra, the Court said:

"We conclude that plaintiff's contention of lack of jurisdiction in the state bar cannot be sustained. We hold that the board of governors of the state bar have the jurisdiction and authority to hear charges against a practicing lawyer of disbarrable offenses involving moral turpitude rendering him unfit to be permitted to continue the practice of law, even though the offenses evidencing such loss of character occurred while he theretofore held judicial office.

In such a hearing that board should not take cognizance of any charge merely relating to lack of diligence in office, or to incorrect action or decision of cases, or to matters involving judicial discretion while in office. Such matters may be attacked and corrected by appeal, or by appropriate proceedings to remove from office if justified by the facts, but may not be the subject of state bar action, either during or after the tenure in office of the judge. In short, the state bar may not control or supervise the judges, but the bar may purge itself of unfit members, even though they were formerly judges."

57 A.L.R.3rd 1150 "Attorneys-Misconduct in Role as Judge". pg. 1162, discusses the disciplining of an attorney for misconduct in a judicial capacity and it states generally "the conduct complained of must have involved some element of moral delinquency, such as fraud, crime, or dishonesty, in order to be punishable." Also, "the courts * * while recognizing that an attorney may be disciplined for acts performed in his capacity as a judge, at least after his term of office has ended, expressly stated that the judicial misconduct must have involved moral turpitude in some form, mere ignorance of the law or the erroneous but innocent exercise of judicial discretion being insufficient to justify disbarment or other punishment."

The cases annotated in support of the foregoing principles involved generally fraudulent, criminal or dishonest conduct in those instances where discipline was imposed. The New Mexico Court in *Petition of Board of Commissioners*, 65 N.M. 332, 337 P.2d 400 (1959), refused to discipline a district judge for publicly rebuking a grand jury where there was no showing of conduct involving dishonesty, illegality or fraud. *In re Mattera*, 34 N.J. 259, 168 A.2d 38 (1961), involved action on the part of the New Jersey Court dismissing a disciplinary complaint against a municipal judge on allegations he failed to properly keep records required by statute or adhere to proper procedures which resulted in over 200 traffic tickets being "killed". The Court's dismissal was premised on a lack of evidence to show conduct of the respondent judge was prompted by improper motivation. As early as 1914, the Iowa Court *In re Condon*, 166 Iowa 265, 147 N.W. 769 (1914), in considering disciplinary proceedings against an attorney who it was alleged maliciously instituted disciplinary proceedings against a judge for the judge's failure to properly itemize and docket court costs, held that mere negligence in failing to perform administrative or discretionary duties was not grounds for discipline of a judge, as there must be evidence demonstrating such failure was the product of dishonesty or criminal intention.

The Supreme Court of Georgia in *Gordon v. Clinkscales*, 215 Ga. 843, 114 S.E.2d 15 (1960), said:

" * * * We hold that a judge can not be disbarred for any official act dictated by his understanding of the law, irrespective of how erroneous his judgment might be. In order to make his conduct in office a valid ground for disbarment, it must be clearly and specifically alleged and proved that such conduct resulted solely from dishonorable or improper motive and was not thought by him to be his duty and within his authority. This being the rule, no honest judge could ever be disbarred for official acts no matter how erroneous they might be. We hold that want of knowledge, unsound judg-

ment, or bias and prejudice upon the part of a judge in his official acts constitute no grounds for disbarring him. That there may never be any misconstruction of this ruling, we hold further that his official acts, even showing they are contrary to law and biased or prejudiced, constitute no evidence even circumstantial of corruption or dishonesty in a disbarment proceeding against him and therefore must not be allowed either in pleadings or evidence."

The Supreme Court of Illinois in *In re McGarry*, 380 Ill. 359, 44 N.E.2d 7 (1942), said that it did not believe that disciplinary measures may be taken against a judge without regard to whether the acts complained of are judicial or extrajudicial and that no case had been called to its attention where the judge had been disbarred because of improper exercise of judicial power while acting in a judicial capacity. The Illinois Court discussed several cases in which disciplinary sanctions were imposed against a former judge but all the cases involved misconduct unconnected with the judge's judicial duties or the commission of a crime in the performance of his judicial duties. The *McGarry* Court announced the guiding principles when it said:

" * * * An attorney at law while holding the office of judge may be disciplined for acts of immorality, dishonesty, fraud or crime and his license taken away, and the fact of his holding a judicial office at the time does not render him immune from punishment, but on the other hand the weight of authority holds that the erroneous exercise of judicial discretion in the performance of a duty or executing a constitutional mandate may not, in the absence of showing such acts constitute fraud, crime or dishonesty, be made the basis of such a proceeding. To so hold, a judge could never know when his official or judicial acts would meet with disapproval and be compelled to defend his acts in an independent proceeding, which in many cases would be an indirect attempt to deprive him of office. The effect upon the independence of a judge would be deplorable and would tend to weaken the judicial branch of government. We hold the public policy which renders a judge acting in a judicial capacity in a court proceeding immune from liability applies with equal force to a disciplinary proceeding of the kind here involved. However, when the act is not official, is outside of his official duty, and not in the exercise of judicial power and purely private and personal, then we take cognizance of complaints without regard to official position. In short, judicial acts of the judge as a matter of public policy are not the proper object of a disciplinary proceeding, but the private and unofficial and independent actions of a judge as an individual may be subject to such jurisdiction."

Most recently, the Supreme Court of the United States in *Stump v. Sparkman*, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978), in considering the scope of a judge's immunity from damages liability when sued under 42 U.S.C. § 1983 said:

"The governing principle of law is well established and is not questioned by the parties. As early as 1872, the Court recognized that it was 'a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, [should] be free to act upon his own convictions, without apprehension of personal consequences to himself.' *Bradley v. Fisher*, supra, [13 Wall. 335, 351, 20 L.Ed. 646 (1872)]. For that reason the Court held that 'judges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly.' 13 Wall., at 351. Later we held that this doctrine of judicial immunity was applicable in suits under § 1 of the Civil Rights Act of 1871, 42 U.S.C. § 1983, for the legislative record gave no indication that Congress intended to abolish this long-established principle. *Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967)."

▮ The public policy which renders a judge acting in a judicial capacity in a court proceeding immune from civil liability for damages must apply with equal force to a disciplinary proceeding of the type here involved if the judiciary is to maintain its independence. In our opinion, an attorney may not be disciplined for acts committed by him in his official capacity as a judge unless such acts involve moral turpitude, of a fraudulent, criminal or dishonest character. That is to say, that of the broad variety of conduct which the courts have traditionally delineated as involving moral turpitude, only those acts which constitute fraudulent, criminal or dishonest conduct, will support a disciplinary complaint against an attorney for acts committed by him in his capacity as a judge. Lack of legal knowledge, unsound judgment, bias and prejudice, oppression or erroneous exercise of judicial discretion on the part of a judge in his official acts constitute no grounds for disciplinary action against him as an attorney.

▮ In the disciplinary proceedings at bar, all the acts forming the basis for the complaint were committed by respondent in his official capacity as a district judge. The Association has not cited a single case wherein an attorney has been disciplined for acts committed by him in his capacity as a judge except in those instances where the acts involved some element of fraud, crime or dishonesty.

▮ Although the Trial Authority found that certain acts committed by respondent were illegal, there is no indication or suggestion that respondent's conduct violated any criminal statute. The Association in its brief makes reference to the Trial Authority's findings that some of respondent's acts were illegal and respondent should have known they were illegal but cites no decisional or statutory law whatsoever suggesting in what manner they were illegal, i. e., in violation of the criminal statutes. Perhaps the word "illegal" as used by the Trial Authority in his findings and the Association in its brief, means that respondent exercised authority as a judge that he had no authority to exercise or wrongfully exercised his authority. Upon the filing of the Report of the Trial Authority with the Chief Justice, the burden of going forward with the proceedings is upon the Association. 5 O.S.1971, Ch. 1, App. 1—Article X, § 16(a). Association has made no showing whatsoever, that any of respondent's acts would give rise to any criminal proceedings. Therefore the issues presented here are entirely different from those presented in the *James* and *Tallent* cases supra.

There is no suggestion in the complaint or in the findings of the trial authority that respondent's conduct was in any respect fraudulent in character. Nor is there any assertion or finding which would support a conclusion that respondent's conduct was prompted by dishonest motivations. On the contrary, the trial authority specifically found respondent's actions were not the product of any desire for personal advancement, pecuniary or otherwise. Association has entirely failed to demonstrate respondent's conduct as indicative of moral turpitude of a fraudulent, criminal or dishonest nature.

COMPLAINT DISMISSED.

LAVENDER, V. C. J., BERRY, BARNES, SIMMS, DOOLIN and HARGRAVE, JJ., and REYNOLDS, Special Justice, concur.

BOX, Special Justice, dissents.

HODGES, C. J., and WILLIAMS, J., having certified their disqualification in the above cause.

LESTER A. REYNOLDS, and DWAIN D. BOX were appointed as Special Justices to serve in their stead.