## STATE of Oklahoma ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,

v.

## Bruce H. HARLTON, Jr., Respondent.

### No. SCBD 3136.

Supreme Court of Oklahoma.

Sept. 20, 1983.

Rehearing Denied Sept. 20, 1983.

---

Gary A. Rife, Gen. Counsel, Timothy P. Morris, Asst. Gen. Counsel, Oklahoma Bar Ass'n, Oklahoma City, for complainant.

Pat Malloy, Malloy & Malloy, Inc., Tulsa, for respondent.

LAVENDER, Justice:

Respondent was charged by information in the United States District Court for the Northern District of Oklahoma with a violation of Title 18, United States Code, Section 3 in that he did receive from Jack Friday a shotgun used by Friday in the commission of a crime (18 United States Code, § 242) and "did willfully conceal said shotgun in order to hinder and prevent the apprehension, trial and punishment of Jack Friday." On the 16th day of January, 1981, Respondent entered a plea of guilty and received a sentence of six months imprisonment, said sentence being suspended and Respondent being placed on probation for a period of five years. The following special conditions of probation were imposed:

1. That Respondent would cease the practice of law in all State and Federal Courts during this time;

2. That he would close his Oklahoma law practice and notify the Oklahoma Bar Association of this by March 15, 1981;

3. That he would not engage in law as a legal consultant or maintain any financial interest in the practice of law for the probation period;

4. That he would report to the United States Probation Office on March 13, 1981.

On May 27, 1981, pursuant to Art. X, § 4(b) of the Rules Creating and Controlling the Oklahoma Bar Association, Claimant forwarded to this Court a certified copy of the judgment and Probation/Commitment Order together with a certified copy of the Information.

On the 8th day of June, 1981, this Court entered an Order directing that Complainant and Respondent submit to this Court their briefs concerning whether or not the crime for which Respondent was convicted involves "moral turpitude" within the provisions of the Rules Creating and Controlling the Oklahoma Bar Association, 5 O.S. Supp.1980, Chapter 1, App. 1, Art. X, § 4(b). Discipline under § 4(b) was predicated upon conviction for a crime involving moral turpitude under the Rules in effect prior to July 1, 1981.[1]

On July 19, 1982, this Court entered its Order of Suspension Pending Disciplinary Proceedings in which this Court determined, in part:

"In *State ex rel. Oklahoma Bar Ass'n v. Jones,* Okl., 566 P.2d 130 (1977), we said:
'For the purpose of determining if there has been a conviction of a crime involving moral turpitude, we cannot consider surrounding circumstances. In deciding whether moral turpitude is involved, we are limited to the charge contained in the documents permitted in the origination of the summary proceedings of § 4(b).'

In *Jones,* we further held that moral turpitude implies something immoral in itself, regardless of whether it is punishable by law, and the element of *intent* and *knowledge* are regarded as important.

---

1. With reference to disciplinary proceedings after July 1, 1981, Rule 4(b) has been amended to read: "A lawyer who has been convicted in any jurisdiction of a crime *which demonstrates such lawyer's unfitness to practice law,* regard-less of whether the conviction resulted from a plea of guilty or nolo contendere or from a verdict after trial, shall be subject to discipline as herein provided, regardless of the pendency of an appeal." (Emphasis supplied.)

"In *Kelly [Kelley] v. City of Tulsa,* Okl., 569 P.2d 455 (1977), we said: 'Moral turpitude broadly defined is any conduct contrary to justice, honesty, and good morals.'

"The charge to which Respondent entered a plea of guilty on its face discloses that Respondent willfully concealed physical evidence in order to hinder and prevent the apprehension, trial and punishment of another who used the concealed object in the commission of a crime. Thus, the elements of intent and knowledge are present, as well as an act which is immoral in itself. The turpitude of Respondent's act is compounded by the fact that he is an attorney, an officer of the court, sworn to uphold the law. Such a willful, illegal subversion of the courts and the law clearly constitutes a crime involving moral turpitude.

"In view of the circumstances of this case, namely, that the Respondent agreed, as one of the conditions for probation, not to engage in the practice of law in this jurisdiction for a period of five (5) years from January 16, 1981, and in view of the fact that apparently no appeal was taken from the judgment and sentence of the federal district court imposing such conditions, among others, there does not appear to be any reason to enter the 'interim' order of suspension provided for in Art. X, § 4(b) of the Rules—Ch. 1, App. 1, 1980 Supp. Oklahoma Statutes. Accordingly, as further provided in said Rule, Respondent is directed to show cause in writing ... why a final order of discipline should not be entered. Complainant may file its answer thereto .... The response and answer will be directed to whether discipline should be imposed, and if so, the severity of the discipline. Briefs and other material may also be filed by the parties within the same time period as provided in said Rule."

This cause is now before this Court for determination of whether a final order of discipline should now be entered, and, if so, the severity of the discipline to be imposed.

Respondent's Application for Oral Argument is denied.

By way of response, Respondent alleges that throughout the plea bargaining process engaged between Respondent and the United States Department of Justice Respondent harbored the belief that, in view of the conditions imposed in connection with his securing a suspension of his sentence, together with the extended period of probation (five years) for a federal misdemeanor conviction, no further action would be taken by the Oklahoma Bar Association in connection with his conviction, and further urges that the severity and length of the probationary conditions is sufficient punishment under the circumstances of the nature of the crime and Respondent's conviction thereof. Respondent further alleges that the "inaction" of the Bar (from February to June of 1981) prejudiced Respondent's presently expressed view that had Respondent contemplated disciplinary proceedings by the Oklahoma Bar Association, Respondent would have filed a timely motion for reconsideration by the federal court of the sentence imposed. Respondent urges, in the alternative, that if discipline is imposed upon Respondent, in the interest of justice, the discipline imposed by this Court should coincide with the term of Respondent's probation.

Neither the Oklahoma Bar Association nor this Court were privy to the federal court proceedings under which Respondent was convicted and under which sentence was imposed. The provisions of Rule 7 of the Rules Governing Disciplinary Proceedings are clear and unequivocal. The transmission to the Chief Justice of the Oklahoma Supreme Court of the conviction and sentence in any jurisdiction invokes the summary disciplinary proceedings under Rule 7.

This Court has many times held that the Oklahoma Supreme Court has constitutionally invested power to control and regulate the practice of law and licensing of attorneys, and that an attorney may be suspend-

ed from the practice of law upon conviction of a crime.[2]

Under the provisions of Rule 7.4, upon Respondent's conviction becoming final, there remains for determination by this Court only the matter of Respondent's ability and desire to explain his conduct or to establish mitigating circumstances relating to the severity of the discipline to be imposed.[3] No exculpatory circumstances of amelioration have been shown by Respondent and the severity of the discipline to be imposed must therefore rest upon the gravity of Respondent's conduct as contained within the criminal sentence and judgment imposed by the sentencing court alone.

In *State ex rel. Oklahoma Bar Association v. Raskin*,[4] we said:

> "The purpose of a disciplinary proceeding is not to punish a practitioner but to inquire into his continued fitness with a view to safeguarding the interest of the public, the courts and the legal profession."

The Respondent concealed physical evidence, willfully and for the express purpose of hindering and preventing the apprehension, trial and punishment of another who used the concealed object (a gun) in the commission of a crime.

In the case of *In re Ryder*,[5] an attorney took possession of and secreted stolen money and a weapon, knowing that the money was stolen and that the weapon had been used in an armed robbery, with intent to retain the property pending his client's trial unless the government should discover it, and with the intent of destroying the chain of evidence linking contraband to his client, thereby preventing its use to establish the client's guilt. It was there determined that Ryder intended eventually to return the money to its rightful owner after his client

had been tried, and that Ryder had consulted reputable persons before and after he took possession of and concealed the property. There, the Court said (370): "Were it not for these facts, we would deem proper his permanent exclusion from practice before this court. In view of the mitigating circumstances, he will be suspended from practice in this court for eighteen months . . . ."

Here, Harlton's conduct is not explained by misguided zeal of an attorney in defense of his client, an intent to ultimately rectify his wrongful act, or mis-reliance upon respected counsel. Rather, Harlton embraced the role of an accessory to a crime as a personal accommodation to its perpetrator.

In *State ex rel. Oklahoma Bar Association v. Raskin*,[6] we said:

> "Lawyers stand licensed by the Supreme Court for the practice of their profession. The maintenance of strict integrity among the members of our bar is one of this court's constitutional responsibilities. Every licensed lawyer is presented to the public as a person worthy of confidence in the performance of all professional activities. If he should become unfit, it is our duty promptly to withdraw the endorsement for the immediate protection of the public."

The gravity of Respondent's misconduct compels us to hold that Respondent's license to practice law should be suspended by the Supreme Court.

We therefore order that Bruce R. Harlton, Jr. be suspended from the practice of law in the state of Oklahoma for a period of five years from March 16, 1981. The cost of the transcript and of the proceedings shall be borne by Harlton. They are to be paid

---

2. *State ex rel. Oklahoma Bar Association v. Armstrong*, Okl., 638 P.2d 1127 (1982); *Tweedy v. Oklahoma Bar Association*, 624 P.2d 1049 (1981); *State ex rel. Oklahoma Bar Association v. Hall*, Okl., 567 P.2d 975 (1977); *State ex rel. Oklahoma Bar Association v. Gresham*, Okl., 556 P.2d 264 (1976).

3. The burden of such showing is upon Respondent. *State ex rel. Oklahoma Bar Association v. Jones, supra.*

4. Okl., 642 P.2d 262 (267) (1982).

5. (USDC Va., 1967) 263 F.Supp. 360, Affirmed, (USCA, 4th Cir.), 381 F.2d 713.

6. *Supra*, note 3.

immediately after this opinion becomes final.

BARNES, C.J., and IRWIN, HODGES, DOOLIN, HARGRAVE, OPALA and WILSON, JJ., concur.

SIMMS, V.C.J., did not participate.