STATE of Oklahoma ex rel. OKLAHOMA
BAR ASSOCIATION, Complainant,

v.

William W. EAKIN, Respondent.

OBAD No. 1166.
SCBD No. 4022.

Supreme Court of Oklahoma.

Oct. 10, 1995.

As Amended on Limited Grant of
Rehearing Dec. 12, 1995.

Allen J. Welch, Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, for Complainant.

Gary A. Rife, Perry, Rife, Walters & Sullivan, Oklahoma City, for Respondent.

OPALA, Justice.

In this disciplinary proceeding against a lawyer, the issues to be decided are: (1) Is the record[1] sufficient for a meaningful *de novo* consideration of the complaint's disposition? and (2) Is a one-year suspension with imposition of costs a fit sanction for respondent's breach of professional discipline? We answer both questions in the affirmative.

The Oklahoma Bar Association [OBA or Bar] charged William W. Eakin [Eakin or respondent], a licensed lawyer and former associate district judge, with one count of professional misconduct. The proceedings were pressed for acts he allegedly committed while serving as a judge. After hearings, the Professional Responsibility Tribunal [PRT] found respondent guilty of violating Rule 8.4(c) and (d) of the Oklahoma Rules of Professional Conduct[2] and recommended suspension from the practice of law for nine months *cum* payment of costs.

## FACTS IN SUPPORT OF COUNT I

Erma Loretta Hathaway (Hathaway) was Eakin's friend and former client. She also was a friend of his wife, keeping in daily contact with her, oftentimes going to her house for coffee and conversation. Hathaway, a *pro se* defendant, was sued in two small claims which had been placed on respondent's docket. The litigation was precipitated by her failure to pay health care-related expenses incurred while she was hos-

---

1. The record consists of a transcript of the Professional Responsibility Tribunal hearing, the Oklahoma Bar Association's exhibits admitted at the hearing, and respondent's admissions.

2. The pertinent terms of Rule 8.4(c) and (d), Oklahoma Rules of Professional Conduct, 5 O.S. 1991 Ch. 1, App. 3–A, state:

"Rule 8.4. **Misconduct**
"It is professional misconduct for a lawyer to:
\* \* \*
(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
(d) engage in conduct that is prejudicial to the administration of justice; \* \* \*"

pitalized. Eakin had visited Hathaway during her stay in the hospital and she had been a guest at his home the evening before the small claims came for hearing. He advised the parties of his relationship with Hathaway and offered to recuse himself. When no one objected, he heard the cases, entering separate judgments against Hathaway in a total amount of $963.69.

Hathaway became very upset over these rulings and went to Eakin's house later that morning where she threatened his wife and also made threats against Eakin and to harm the judge's home. Upon learning about this incident, Eakin went to Hathaway's residence and gave her a check for $945.00. She tore up the check but later accepted from Eakin another one for the same amount. According to Eakin, he wrote the check in an attempt to rekindle Hathaway's friendship with his wife. Respondent told Hathaway to use the money to pay either the judgments or the legal fees for an appeal from his decisions. Hathaway cashed the second check but apparently did not use the money for the purpose it was given.

Hathaway next sought Eakin's help in drafting her motions for new trial in both cases. She came to his office where he hand-wrote the form to be used. It listed two grounds for new trial.[3] Hathaway used the form, adding a third ground to the motions.[4] Eakin then recused himself from considering Hathaway's new trial quest. The motions were overruled by another judge *after Hathaway had failed to appear at the hearing.*

One of the plaintiffs later pressed for a hearing on assets. Respondent *agreed* to preside at this proceeding. He continued the hearing at least twice, at the request of both Hathaway and the plaintiff. Hathaway contacted respondent several times about the upcoming hearing and in connection with her desire not to reveal any of her assets. She discussed with Eakin her intention (a) to close her personal checking account, (b) to open a checking account in her aunt's name and (c) to claim, at the assets hearing, that she did not have a personal checking account. Hathaway also expressed concern that the plaintiffs' lawyer had seen her writing a check on her personal checking account. Respondent admitted telling Hathaway that the plaintiffs' lawyer could not disprove that the check he allegedly saw her write was drawn on her aunt's rather than her own account. During one of these conversations, *Eakin told Hathaway that he had never heard of anyone in the county being prosecuted for perjury committed in a small claims assets hearing.*

Eakin learned from the local district attorney he was under investigation for (a) subornation of perjury and (b) possession and concealment of stolen property which had allegedly been given to him by Hathaway. He resigned from office two weeks later. According to respondent, he resigned rather than face charges anticipated from three sources—violations of criminal law, of the Code of Judicial Conduct[5] and of the Rules of Professional Conduct.[6]

## I

### THE RECORD BEFORE THE COURT IS COMPLETE FOR A *DE NOVO* CONSIDERATION OF ALL FACTS RELEVANT TO THIS PROCEEDING

The Oklahoma Supreme Court has exclusive original jurisdiction over Bar disciplinary proceedings.[7] The court's review is

---

3. Respondent's handwritten form lists two grounds for new trial—i.e. that the decision "is not sustained by sufficient evidence" and "is contrary to law."

4. The third ground added by Hathaway to the respondent's form for a new trial motion is "error of law occurring at the trial, excepted to by the defendant."

5. Code of Judicial Conduct, 5 O.S.1991, Ch. 1, App. 4.

6. Rules of Professional Conduct, 5 O.S.1991, Ch. 1, App. 3–A.

7. *State ex rel. Okl. Bar Ass'n v. Donnelly,* Okl., 848 P.2d 543, 545 (1992); *State ex rel. Okl. Bar Ass'n v. Raskin,* Okl., 642 P.2d 262, 265 (1982); *Tweedy v. Oklahoma Bar Ass'n,* Okl., 624 P.2d 1049, 1052 (1981); *In re Integration of State Bar of Oklahoma,* 185 Okl. 505, 95 P.2d 113, 115 (1939).

by *de novo* consideration *on the record.*[8] Neither the trial authority's findings nor its assessments of the weight or credibility of the evidence can bind this court.[9] In a *de novo* on-the-record review, in which the court exercises its constitutionally invested, non-delegable power to regulate both the practice of law and the legal practitioners,[10] a nondeferential full-scale exploration of all relevant facts is mandatory.[11]

The court's task cannot be discharged unless the PRT panel submit for a *de novo* examination (of all material issues) a *complete record* of the proceedings.[12] Our initial task is to ensure that the tendered record is sufficient for a thorough probe into essential facts and for crafting the appropriate discipline [13]—one that would avoid the vice of visiting upon the respondent-lawyer disparate treatment.[14]

We hold the record is adequate for *de novo* consideration of respondent's alleged misconduct.

## II

## POSSESSION AND CONCEALMENT OF STOLEN PROPERTY

During the PRT hearing the OBA argued that Eakin had received some stolen property from Hathaway, including building materials to be used in the construction of an addition to his home. In return for the stolen property, the OBA asserts, Eakin had assured her of favorable treatment in the small claims. According to the OBA, when the plaintiffs came to court represented by respondent's opponent in the previous (judicial) election, Eakin felt compelled to enter judgment for the plaintiffs. He then took steps to ameliorate the effect of his action against Hathaway, the OBA opines, by himself paying the adjudicated amount. These *extraordinary measures,* the OBA urges, are evidence of an illegal *quid pro quo* between Hathaway and respondent and hence consti-

---

**8.** *State ex rel. Okl. Bar Ass'n v. Lloyd,* Okl., 787 P.2d 855, 858 (1990) [*Lloyd II* ]; *State ex rel. Okl. Bar Ass'n v. Stubblefield,* Okl., 766 P.2d 979, 982 (1988); *State ex rel. Okl. Bar Ass'n v. Cantrell,* Okl., 734 P.2d 1292, 1293 (1987); *Raskin, supra* note 7 at 265–266. Because this court's cognizance of disciplinary proceedings cannot be shared with any other institution, every aspect of the Bar's adjudicative process must be supervised by our *de novo* consideration. This attribute of nondelegable jurisdiction serves to distinguish the conduct of bar disciplinary functions from a *trial de novo*—a retrial in a different court—or even from *de novo appellate review on the record,* which stands for an independent, non-deferential examination of *another tribunal's* record.

**9.** *Raskin, supra* note 7 at 265. The pertinent terms of Rule 6.15, Rules Governing Disciplinary Proceedings, 5 O.S.1991, Ch. 1, App. 1–A, are:

"(a) The Supreme Court may approve the Trial Panel's findings of fact or make its own independent *findings, impose discipline, dismiss the proceedings or take such other action as it deems appropriate.*" (Emphasis added.)

**10.** *Raskin, supra* note 7 at 266; *Tweedy, supra* note 7 at 1052.

**11.** *State ex rel. Okl. Bar Ass'n v. Dugger,* Okl., 385 P.2d 486 (syl.) (1963).

**12.** The terms of Rule 6.13, Rules Governing Disciplinary Proceedings, 5 O.S.1991, Ch. 1, App. 1–A, provide in part:

"... [T]he Trial Panel shall file with the Clerk of the Supreme Court a written report which *shall contain the Trial Panel's findings of fact on all pertinent issues and conclusions of law* ...." (Emphasis added.)

**13.** A complete record is well-nigh necessary for review of a bar disciplinary proceeding. The material to be considered is never to be deemed settled beyond our ability to expand it. The record always remains within this court's *plenary* power to order supplementation. *State ex rel. Okl. Bar Ass'n v. Moss,* Okl., 794 P.2d 403, 404 (1990); *State ex rel. Okl. Bar Ass'n v. Samara,* Okl., 683 P.2d 979, 983 (1984); *State ex rel. Okl. Bar Ass'n v. Warzyn,* Okl., 624 P.2d 1068, 1071 (1981). *See also State ex rel. Okl. Bar Ass'n v. Armstrong,* Okl., 791 P.2d 815, 816 (1990), which teaches that an *interim* suspension of a lawyer cannot be made on *an incomplete record.* The same problem confronted this court in *State ex rel. Okl. Bar Ass'n v. Lloyd,* SCBD No. 3455, received November 17, 1987 [*Lloyd I* ]. There, we declined to accept the trial authority's recommendation and returned the case for a full evidentiary hearing before the panel whence it came. For a complete explanation of the applicable procedure, see *Lloyd II, supra* note 8 at 856.

**14.** *State ex rel. Okl. Bar Ass'n v. Perceful,* Okl., 796 P.2d 627, 630 (1990).

tute conduct prejudicial to the administration of justice in the Rule 8.4(d) sense.[15] In support of its argument on this point, the OBA presented testimony of the district attorney, the district judge and Hathaway. The Bar urges that respondent's acts in receiving and concealing stolen property are dishonest conduct within the meaning of Rule 8.4(c).[16]

The PRT found Eakin knowingly received and concealed stolen property. While it did not state that Eakin's acts were his *quid pro quo* for a favorable decision, the PRT found there was sufficient evidence to place respondent in "serious jeopardy as to a charge of knowingly receiving and concealing stolen property."

Eakin complains that the lion's share of the PRT report, as well as the bulk of the OBA's brief, is devoted to the stolen property issue. He argues that this issue is the foundation for the remaining findings upon which the PRT made its recommendation for discipline. Because he *neither* had prior notice that the Bar would include the stolen property element in its complaint *nor* was he informed of that count by its language, Eakin contends he was denied an opportunity to defend against the charge. He urges he was irreparably harmed by the Bar's injection of this probative feature, and claims that the tainted proof *colored* the other PRT adverse findings, *contaminating* the entire hearing process.

The OBA urges that the issue of stolen property, though not referenced in the complaint as a *separate count of misconduct,* was offered merely to establish motive for other acts that stood admitted.[17] By failing to object to any testimony about the stolen property at the PRT hearing, the OBA argues, respondent has waived any objection he may have had to the offending proof. Even if the testimony about Eakin's possession or concealment of stolen property should be disregarded, the OBA adds, respondent's *other acts* in the record prove his *dishonesty, fraud, deceit or misrepresentation.*

■■■ The fundamentals of due process are applicable in lawyer disciplinary proceedings.[18] The Bar must allege facts sufficient to put the accused lawyer on notice of the charges and afford the respondent ample opportunity to defend against the allegations.[19] Because the facts stated in the com-

---

**15.** For the pertinent terms of Rule 8.4(d), see *supra* note 2.

**16.** For the pertinent terms of Rule 8.4(c), see *supra* note 2.

**17.** For this proposition the OBA cites 12 O.S. 1991 § 2404(B), which provides that "[e]vidence of other crimes, wrongs, or other acts ... may ... be admissible for ... proof of motive...."

**18.** *State ex rel. Okl. Bar Ass'n v. Lobaugh,* Okl., 781 P.2d 806, 811 (1988).

**19.** Rule 6.2, Rules Governing Disciplinary Proceedings, 5 O.S.1991, Ch. 1, App. 1–A, provides: "The complaint shall set forth the specific facts constituting the alleged misconduct, and if prior conduct resulting in discipline, or evidence from prior investigations, is relied upon to enhance discipline, the prior acts or conduct relied upon shall be set forth."
Rule 6.2 requires the same specificity that applies in a criminal information and indictment. *See in this connection Hatton v. State,* Okl.Cr., 96 Okl.Cr. 227, 252 P.2d 170, 171 (1952) (the gist of the sufficiency of an indictment or information is whether it alleges every element of the offense intended to be charged and sufficiently apprises the defendant of what he must be prepared to meet). Due process guarantees the defendant notice of the charges against him. *Cole v. Arkansas,* 333 U.S. 196, 201, 68 S.Ct. 514, 517, 92 L.Ed. 644 (1948); *Application of Gault,* 387 U.S. 1, 34, 87 S.Ct. 1428, 1446, 18 L.Ed.2d 527 (1967); *Eaton v. Tulsa,* 415 U.S. 697, 699, 94 S.Ct. 1228, 1230, 39 L.Ed.2d 693 (1974); *Presnell v. Georgia,* 439 U.S. 14, 16, 99 S.Ct. 235, 236–237, 58 L.Ed.2d 207 (1978). *See also State ex rel. Okl. Bar Ass'n v. Johnston,* Okl., 863 P.2d 1136, 1143 (1993); *State ex rel. Okl. Bar Ass'n v. Miskovsky,* Okl., 804 P.2d 434, 440 (1990); *Moss, supra* note 13 at 407; *Lobaugh, supra* note 18 at 811. A *fatal variance* between the tendered proof and the allegation of a single count offends due process. A variance occurs when facts proved at trial are different from those alleged in the indictment. The test of whether a variance between the proof at trial and the allegation in the indictment is fatal is "whether there has been such a variance as to 'affect the substantial rights' of the accused." *Berger v. United States,* 295 U.S. 78, 82, 55 S.Ct. 629, 630, 79 L.Ed. 1314 (1935). A *variance* between the indictment and the evidence at trial is *fatal* unless the defendant could have anticipated from the indictment what the proof would be, or unless a conviction on the indictment would bar a subsequent prosecution for the same offense. *United States v. Cowley,* 452 F.2d 243, 247 (10th Cir.1971). *See also,* BLACK'S LAW DICTIONARY 547 (*fatal variance* ), 1392–

plaint did not give Eakin sufficient notice of the Bar's intention to press, at the PRT hearing, the critical element of his alleged complicity in receiving stolen property for an illegal *quid pro quo*, it was his burden to object to the Bar's proffer of improper proof and to ask for a continuance to afford him time to meet that issue.[20] Respondent's failure to object operates to waive the error, if any, in admitting evidence that stood in fatal variance with the complaint's allegations.

 It is the OBA's burden to establish the charges by clear and convincing evidence.[21] On this record, there is no clear and convincing proof that, *at the time he received it,* Eakin knew the character of the property in question *as stolen.* The Bar failed to prove the critical element of *guilty knowledge.*[22] The local district attorney's testimony that Eakin may have some time later *suspected* the property was stolen falls

short of clear and convincing proof to support the *scienter.* Because the record fails to supply this *sine qua non* element of proof, we conclude there is no clear and convincing evidence of a *quid pro quo* passing to respondent for a favor to Hathaway.

## III

### *EX PARTE* COMMUNICATIONS AND OTHER CONDUCT PREJUDICIAL TO THE ADMINISTRATION OF JUSTICE

The OBA urges that Eakin's pre- and post-judgment *ex parte* contacts with Hathaway—i.e., visiting with her at his home the night before the small claims hearing, paying her the amount of the judgments which he had entered against her, drafting a new trial motion for Hathaway's use in pressing for vacation of his decisions in the small claims,

---

1393 *(variance)* (5th ed. 1979); *People v. Guerrero,* 22 Cal.2d 183, 137 P.2d 21, 24 (Cal.1943). A variance between the allegations in the pleadings and the proof is deemed material if it has actually misled the adverse party to his prejudice in maintaining the action or defense. The burden is cast upon the party deeming himself adversely affected by variance to prove that he is prejudiced by the amendment and impaired in his ability to do forensic battle. *Liberty Plan Co. v. Francis T. Smith Lumber Co.,* Okl., 360 P.2d 500, 503 (1961). Similarly, the allegations of fraud must be stated with sufficient particularity to enable the opposing party to prepare his/her responsive pleadings and defenses. *Gay v. Akin,* Okl., 766 P.2d 985, 993 (1988); *Gianfillippo v. Northland Cas. Co.,* Okl., 861 P.2d 308, 310–311 (1993); *Brown v. Founders Bank and Trust Co.,* Okl., 890 P.2d 855, 862 (1995).

**20.** The stolen property issue was a *constituent element* of the Bar's proof in support of its broad rules violation. Unless a variance is specifically called to the tribunal's attention and its prejudicial effect shown, the party complaining waives the variance and the pleading will be deemed to have been amended, by operation of law, to conform to the proof, even though no formal amendment was sought and none was required by the court. *Liberty, supra* note 19 at 503; *Thompson v. Walton,* Okl., 297 P.2d 1084, 1084 (syl. 2) (1956); *Kelly v. Cann,* 192 Okl. 446, 136 P.2d 896, 899 (1942); *Cook v. Sheffield,* 181 Okl. 635, 75 P.2d 1101, 1104 (1938). *See also State v. Marcum,* 750 P.2d 599, 602 (Utah 1988).

**21.** Rule 6.12, Rules Governing Disciplinary Proceedings, 5 O.S.1991, Ch. 1, App. 1–A, provides in pertinent part:

"... (c) To warrant a finding against the respondent in a contested case, the charge or charges must be established by clear and convincing evidence, and at least two of the members of the Trial Panel must concur in the findings."

*See State ex rel. Oklahoma Bar Ass'n v. Farrant,* Okl., 867 P.2d 1279, 1283 (1994); *State ex rel. Oklahoma Bar Ass'n v. Gasaway,* Okl., 810 P.2d 826, 830 (1991); *State ex rel. Oklahoma Bar Ass'n v. Braswell,* Okl., 663 P.2d 1228, 1232 (1983). For a discussion of the clear-and-convincing standard of proof, see *Addington v. Texas,* 441 U.S. 418, 424–425, 431–432, 99 S.Ct. 1804, 1808–1809, 1812–1813, 60 L.Ed.2d 323 (1979) (in civil commitment proceedings a *clear-and-convincing* standard of proof is required to meet due process demands). *Addington* observes there are three standards (or levels) of proof—i.e., beyond a reasonable doubt, clear and convincing and preponderance of the evidence. The intermediate standard of *clear and convincing* evidence, which serves to protect important individual interests in civil cases, reduces the risk of error by increasing the plaintiff's burden of persuasion. *Id.,* 441 U.S. at 424, 99 S.Ct. at 1808. It is distinguishable (a) from the higher, beyond-a-reasonable-doubt standard, which is designed to exclude as nearly as possible the likelihood of an erroneous judgment, and (b) from the lower, preponderance-of-the-evidence standard, which requires the litigants to share the risk of error in a roughly equal fashion. *Id.*

**22.** Guilty knowledge is known as *scienter. Dayton Hudson Corp. v. Amer. Mut. Lia. Ins. Co.,* Okl., 621 P.2d 1155, 1161 (1980).

and several *ex parte* communications about the hearing on assets which had been assigned to him—when considered together (1) are *prejudicial to the administration of justice* in the Rule 8.4(d)[23] sense and (2) are *dishonest* and *deceitful* within the meaning of Rule 8.4(c).[24] This conduct was even more inexcusable, the OBA adds, in light of respondent's personal relationship with Hathaway. The OBA notes that (a) Eakin was Hathaway's former lawyer; (b) he had employed her son in the remodeling of his home; (c) Hathaway was a close personal friend of both Eakin and his wife; and (d) Eakin had visited Hathaway during her hospitalization (the latter occasion giving rise to the small claims). In short, the OBA urges that Eakin's *ex parte* communications stand as *elements of proof* supportive of the OBA's charge that he had breached the terms of Rule 8.4(c) and (d).

### Respondent's Payment To Hathaway

The PRT found that Eakin's payment of $945 to Hathaway was "strange at best" and "strong evidence of the [OBA's] claim that [respondent] acted improperly." The OBA submits that this conduct is *prejudicial to the administration of justice*. Although he concedes his payment to Hathaway may have been a mistake, Eakin believes that he has done nothing wrong. There is no element of fraud or dishonesty, respondent submits, in making the payment.

### The Motions For New Trial

The PRT recognized that while in small claims the court often aids litigants in attempting to present their case, respondent's unusual relationship with Hathaway should have been understood as preventing him from *assisting her in challenging his earlier*

*adverse decisions*. In light of this relationship, the OBA argues, respondent's post-judgment acts—i.e., advising Hathaway that she needed to file a new trial motion, preparing a handwritten draft of the motion for her use, and monitoring the statutory period for its filing—constitute conduct *prejudicial to the administration of justice*. Respondent counters he did not act improperly in advising Hathaway how to pursue her legal remedies as a *pro se* litigant. According to Eakin, merely showing her a motion for new trial does not involve moral turpitude[25] and hence cannot be a basis for discipline.

### The Postjudgment Hearing On Assets

Respondent, who had been assigned the hearing on assets in Hathaway's case, talked to her on several occasions about the purpose of and procedure in that stage of the case. He concedes she had talked to him about possibly closing her checking account, opening another one in the name of a third person and about testifying at the assets hearing that she had no personal checking account. The OBA urges that Eakin's *ex parte* communications with Hathaway and the extraordinary measures he undertook to assist her after the trial are acts *prejudicial to the administration of justice*. The PRT described that behavior as "an unbelievable lack of judicial restraint." Moreover, the OBA adds, the *pattern of ex parte communications* between Hathaway and Eakin during the various stages is further evidence of conduct involving *dishonesty* or *deceit*.

Eakin counters that Hathaway, at the request of law enforcement officials, initiated these conversations in an attempt to entrap him.[26] He directs us to Hathaway's testimony that the discussions would not have taken

---

**23.** For the pertinent terms of Rule 8.4(d), see *supra* note 2.

**24.** For the pertinent terms of Rule 8.4(c), see *supra* note 2.

**25.** For a discussion of *recent excision* of the *moral turpitude* standard from the now-effective Rules of Professional Conduct, see *infra* note 37.

**26.** One PRT panel member based his dissent on the alleged attempt by law enforcement officers to entrap Eakin. The OBA notes that the issue

whether entrapment constitutes a defense in bar disciplinary cases has not been settled in Oklahoma. Even if entrapment were proven, the OBA urges, it would corroborate, not rebut, the charge of unfitness. We need not reach that issue here. On this record Eakin's postjudgment acts, when considered together, are amply supportive of (a) the PRT's finding of rules violation and (b) the need for imposing professional discipline.

place had she not been equipped with a body microphone to record the conversations.

On this record, there is clear and convincing evidence[27] that respondent engaged in *extended ex parte* communications with a litigant about *material components of the merits of a proceeding then pending before the court*—the hearing on assets. All this occurred "behind the backs" of the other litigants. In an adversarial proceeding a lawyer's function is to present proof to the end that the case may be decided according to law. *A judge must be a detached arbiter.* Eakin's *ex parte* communications with Hathaway about the impending assets hearing taints the perception of decisional fairness and adversely reflects on his fitness as a licensed practitioner.[28] We hold that respondent's *pattern of ex parte communications with Hathaway* during the various stages of the forensic contest about material aspects of the pending case is not only *prejudicial to the administration of judicial process and in violation of Rule 8.4(d)* but, under the facts shown, it is also *deceitful and dishonest within the meaning of Rule 8.4(c).*

## IV

## ATTEMPTED SUBORNATION OF PERJURY AND CONCEALMENT OF ASSETS

### A.

### ATTEMPTED SUBORNATION OF PERJURY

The OBA charged Eakin with giving tacit or overt encouragement to Hathaway in response to her threats (a) to commit perjury

at the assets hearing—i.e. to testify falsely that she did not have a checking account—and (b) to conceal assets from her judgment creditors by closing her personal checking account and opening another in her aunt's name. These claims are but two *elements of proof,* among several others, in support of the Bar's charge that respondent breached Rule 8.4(c) and (d).[29] The OBA directs us to Eakin's *admission that he told Hathaway he had never heard of anyone in the county being prosecuted for perjury committed in a small claims assets hearing.*

According to Eakin, he made the statement merely to allay Hathaway's fear that she could be charged with perjury even if she did nothing wrong. Moreover, Eakin urges, Hathaway's testimony indicates that (a) the perjury issue arose in the context of the entrapment scheme and (b) he *never counselled her to commit perjury.* The district attorney, who also investigated the charge of attempted subornation of perjury, testified that when he talked to Eakin about the charge, the latter had "acquiesced" in the allegation. He explained that by *acquiescence* he meant that Eakin was "fairly unresponsive to the issue." Although he believed there was enough information to convict Eakin on this charge, the district attorney stated on cross examination that his "assessment" of the perjury issue "was pretty loose". The PRT found that while the evidence of attempted subornation of perjury was not clear and convincing, Eakin's conduct, taken together with all of the facts, shows that he acted in a *highly prejudicial manner.*

The OBA, noting Eakin's heavy reliance on Hathaway's exculpatory testimony on this

27. For the clear-and-convincing-evidence standard, see Rule 6.12, *supra* note 21; *Braswell, supra* note 21 at 1232.

28. *See in this connection* bar disciplinary cases involving improper *ex parte* communications by a lawyer with a judge about the merits of a case assigned to the trier—*Matter of LaCava,* 615 N.E.2d 93, 96 (Ind.1993) (respondent communicated *ex parte* with a member of a medical malpractice review panel considering the acts of his client); *Matter of Riley,* 142 Ariz. 604, 691 P.2d 695, 701 (1984) (respondent communicated *ex parte* with a judge); *In re Conduct of Burrows,* 291 Or. 135, 629 P.2d 820, 826 (1981) (respon-

dent made *ex parte* communications with a judge in a criminal case); *Heavey v. State Bar,* 17 Cal.3d 553, 131 Cal.Rptr. 406, 409, 551 P.2d 1238, 1241 (Cal.1976) (respondent communicated *ex parte* with a judge in a civil action); *The Florida Bar v. Mason,* 334 So.2d 1 (Fla.1976) (respondent made *ex parte* communications with an appellate judge in a civil case); *In re Hasler,* 447 S.W.2d 65, 65 (Mo.1969) (respondent communicated *ex parte* with a judge in a criminal matter).

29. For the pertinent terms of Rule 8.4(c) and (d), see *supra* note 2.

point (the subornation of perjury charge), urges this court to disregard any statements she made at the PRT hearing. In support of this notion, the OBA directs us (a) to the PRT's conclusion that she "was difficult to believe in her testimony, whether it favored the [OBA] or Eakin" and (b) to Hathaway's testimony about her daily use of prescription drugs for the past two years, her confinement in a mental institution to "get dried out," her use of the Halcion drug on the day before the PRT hearing, the drug's effect on her short-term memory and the fact that, even though she had taken drugs that day, she was experiencing withdrawal symptoms at the hearing.

The terms of 21 O.S.1991 § 504 are: "Whoever procures another to commit perjury is guilty of perjury by subornation. *Whoever does any act with the specific intent to commit perjury by subornation but fails to complete that offense is guilty of attempted perjury by subornation.*" (Emphasis added.) The offense of *attempted perjury by subornation* is made out whenever the accused instigates and procures the agreement of a prospective witness to testify falsely.[30] It is a necessary element of the crime that both the accused and the person to be suborned knew that the testimony sought to be elicited was false, material and would be used in actual or prospective litigation.[31] A pending or potentially pending legal proceeding is not a required element of proof to establish the commission of attempted subornation of perjury.[32] It is unnecessary to show that the person suborned did testify falsely or indeed did testify at all.

When the sufficiency of the evidence is challenged, the test is whether a prima facie case has been made out.[33] We cannot say that on this record the OBA established by clear and convincing evidence that Eakin was guilty of encouraging or inducing Hathaway to commit perjury. Respondent's observation *that no one in the county had ever been prosecuted for perjury committed in small claims assets hearings* clearly does not rise to the level of attempted subornation of perjury. We hold that insofar as the OBA attempted to show, as an element of proof in support of a single count, that Eakin may have been guilty of attempted perjury by subornation, the evidence falls short of the clear-and-convincing standard of proof showing that he had *concrete* knowledge of or acted as an accomplice in Hathaway's unlawful scheme to obstruct execution for securing satisfaction of her adjudicated liability. Even if we disregard Hathaway's favorable testimony, *the other proof in the case does not measure up to the mandated clear-and-convincing-evidence standard.*[34]

## B.

### *CONCEALMENT OF ASSETS*

Hathaway's threats to commit perjury as well as to close her own and open a bank account in another's name, the OBA urges, is part of a scheme to secrete assets from her judgment creditors. The OBA argues respondent's *knowledge of these threats* (relating to a contested case pending before him), combined with his silence, violates the very essence of the standards expressed in 5 O.S. 1991 § 2 that a lawyer "will do no falsehood

**30.** *Cantrell v. State*, Okl.Cr., 697 P.2d 968, 970–971 (1985) [*Cantrell I*] (Cantrell, a legal licensee, was convicted of the crime of attempted subornation of perjury and given a two-and-a-half-year suspended sentence). He was disbarred following his conviction of this crime (*State of Oklahoma ex rel. Oklahoma Bar Association v. Cantrell*, Okl., 734 P.2d 1292 (1987) [*Cantrell II*]) and was later reinstated after a gubernatorial pardon (*Matter of Reinstatement of Cantrell*, Okl., 785 P.2d 312 (1989) [*Cantrell III*]). *See also Riley v. United States*, 647 A.2d 1165, 1173 (D.C.App.1994) (Ferren, J., concurring); Charles

E. Torcia, 4 WHARTON'S CRIMINAL LAW, § 607 at 330 (4th ed. 1981 and Supp.1993).

**31.** *Cantrell I, supra* note 30 at 970–971; *Riley, supra* note 30 at 1173; 4 *WHARTON'S, supra* note 30 at § 607.

**32.** *Cantrell I, supra* note 30 at 970–971; 4 *WHARTON'S, supra* note 30 at § 607.

**33.** *Cantrell I, supra* note 30 at 970.

**34.** Rule 6.12, *supra* note 21; *Braswell, supra* note 21 at 1232.

or *consent that any be done in court.*[35] (Emphasis added.) According to the OBA, respondent gave Hathaway passive (if not overt) encouragement to conceal her assets by failing to deter intended unlawful conduct. In fact, the OBA opines, Eakin continued the hearing on assets at Hathaway's request in order that she could move her bank account. In support of this notion, the OBA directs us to Eakin's response (to the complaint) which states that he "cannot admit or deny" whether Hathaway told him that she needed the time to change her bank account. Respondent's passive (or active) encouragement of her concealment-of-assets plan, the OBA urges, constitutes conduct *prejudicial to the administration of justice,* which is violative of Rule 8.4(d).[36]

Hathaway testified that Eakin had given her two continuances—once when she was "drugged up" and another when the sheriff came to her home, attached a tape recorder to her telephone and instructed her to call respondent and request a continuance. Directing us to Hathaway's testimony, respondent argues that he never granted a continuance for the purpose of allowing her to transfer her bank account. He points out that he gave continuances in the hearing on assets *to all the litigants,* not just Hathaway.

■ On this record, we hold that the OBA has failed to establish by clear and convincing proof respondent's complicity in a fraudulent scheme to hide Hathaway's assets from the reach of judgment creditors. On this point the proof falls short of meeting the mandated clear-and-convincing standard of evidence.

In sum, we hold there is *no clear and convincing proof* (a) to show Eakin's intent to encourage Hathaway to commit perjury or (b) to conceal assets from the judgment creditors in the small claims.

## V

## A ONE–YEAR SUSPENSION IS AN APPROPRIATE SANCTION FOR RESPONDENT'S PROFESSIONAL MISCONDUCT

Eakin urges the evidence adduced before the PRT is insufficient to support a finding of professional delinquency that warrants imposition of discipline. His argument challenges the sufficiency of evidence rather than the disciplinary cognizance of the Bar. Eakin relies on *State ex rel. Oklahoma Bar Association v. Sullivan.*[37] *Sullivan* teaches that a lawyer, qua practitioner, may not be disciplined for conduct while in judicial office unless the acts of which complaint is made involve some element of moral turpitude, fraud, or some criminal (or dishonest) conduct.[38] Because we find that there is clear and convincing proof of Eakin's ex parte communications with Hathaway during the course of litigation, which constitute dishonest acts within the meaning of Rule 8.4(c),[39] Eakin stands subject to discipline under the standards of *Sullivan.*

■ The court's responsibility in a disciplinary proceeding is not to inflict punishment on the respondent but to inquire into and test the accused lawyer's continued fitness, with a view to safeguarding the interest of the public, of the courts and of the legal profession.[40] The circumstances of a law-

**35.** The terms of 5 O.S.1991 § 2 provide in pertinent part:

> "Upon being permitted to practice as attorneys and counselors at law, they shall, in open court, take the following oath: You do solemnly swear that ... you will do no falsehood or *consent that any be done in court,* and if you know of any *you will give knowledge thereof to the judges of the court, or some one of them, that it may be reformed ...."* (Emphasis added.)

**36.** For the terms of Rule 8.4(d), see *supra* note 2.

**37.** *Oklahoma Bar Ass'n v. Sullivan,* Okl., 596 P.2d 864, 869 (1979).

**38.** *Id.* at 869.

**39.** *See* the terms of Rule 8.4, Rules of Professional Conduct, 5 O.S.1991, Ch. 1, App. 3–A, *supra* note 2.

**40.** *Donnelly, supra* note 7 at 545–46; *State ex rel. Okl. Bar Ass'n v. Colston,* Okl., 777 P.2d 920, 925 (1989); *Moss, supra* note 13 at 207; *State ex rel. Okl. Bar Ass'n v. Harlton,* Okl., 669 P.2d 774, 777 (1983); *Raskin, supra* note 7 at 267.

yer's professional misconduct (Rule 6)[41] are important in searching for solutions that would accord with the law's imperative of giving the public its due protection from substandard legal practitioners.[42] The complaint against Eakin was pressed as a Rule 6 proceeding. It focuses on the lawyer's *offending past conduct.*[43]

Eakin has been charged with (1) engaging in acts involving dishonesty, fraud, deceit or misrepresentation and (2) engaging in that conduct prejudicial to the administration of judicial process which is in violation of Rule 8.4(c) and (d). As reflected by the record, Eakin was shown to have markedly departed from these mandatory standards.

 A lawyer's license is a certificate of professional fitness to deal with the public as a legal practitioner. Public confidence in the practitioner is essential to the proper functioning of the profession. A *lawyer's misconduct* adversely reflects on the entire Bar because it exhibits a lack of commitment to the clients' causes, to the courts, and to other members of the Bar. Eakin's actions call for the imposition of severe discipline. The PRT panel recommended that Eakin be suspended from the practice of law for a nine-month interval. On *de novo* review of the record, we *(a) find the one count of the Bar's complaint amply supported by clear and convincing record proof,*[44] (b) declare the respondent's conduct to have been greatly prejudicial to the evenhanded administration of judicial process and to the public perception of judicial impartiality, and (c) conclude that, based on the totality of evidence focusing on the intensity of the respondent's excessive and grossly offensive entanglement with one who was then a litigant before the court over which he presided as judge, a suspension from practice for one year with payment of costs constitutes the proper discipline to be imposed in this case. Within thirty days of the date of this opinion Eakin shall pay the costs of this proceeding in the amount of $1,874.70.

Respondent shall stand suspended from the practice of law for a period of one year from the day this opinion becomes final; costs of this disciplinary prosecution shall be promptly paid in full as a precondition for respondent's reinstatement.

KAUGER, V.C.J., and HODGES, LAVENDER, OPALA, SUMMERS and WATT, JJ., concur.

ALMA WILSON, C.J., and SIMMS, J., concur in part and dissent in part.

HARGRAVE, J., not participating.

ALMA WILSON, Chief Justice, concurring in part and dissenting in part.

I concur with that portion of the majority opinion that imposes discipline but would adopt PRT's recommendation to impose nine months' suspension.

SIMMS, Justice, concurring in part and dissenting in part.

I concur in imposing discipline; however, I would suspend respondent for a period of two years and one day.

---

41. Rule 6 (Formal Proceedings Before Supreme Court and Professional Responsibility Tribunal), Rules Governing Disciplinary Proceedings, 5 O.S.1981, Ch. 1, App. 1–A. A Rule 6 proceeding focuses on the lawyer's *past professional misconduct.*

42. *Donnelly, supra* note 7 at 547–48.

43. This approach, which is necessary to safeguard public interest and to protect the integrity of the judicial system, also is designed to deter a respondent from offending behavior in the future as well as to discourage other members of the Bar from like derelictions. *State ex rel. Okl. Bar Ass'n v. Arnett,* Okl., 815 P.2d 170, 171 (1991); *State ex rel. Okl. Bar Ass'n v. Denton,* Okl., 598 P.2d 663, 665 (1979).

44. Rule 6.12, *supra* note 21; *Braswell, supra* note 21 at 1232.