2002 OK JUD 1

**STATE of Oklahoma, ex rel. W.A. Drew EDMONDSON, Appellee,**

v.

**Jerry L. COLCLAZIER, District Judge, Seminole County, Appellant.**

No. CJAD–01–2.

Court on the Judiciary of Oklahoma, Appellate Division.

June 14, 2002.

Preston A. Trimble, Norman, Oklahoma and Stephen R. Stephens, Oklahoma City, Oklahoma, for the appellant.

Phil Frazier, special prosecutor, Tulsa, Oklahoma, for appellee.

BOUDREAU, J.

## I. FACTS AND PROCEDURAL BACKGROUND

¶ 1   Six separate complaints alleging that Judge Jerry Colclazier committed "oppression in office" were presented to the Trial Division of the Court on the Judiciary (Trial Division).  The Trial Division filed its judgment on November 27, 2001, finding by clear and convincing evidence that four instances of conduct constituted "oppression in office" and warranted removal from office.  The Trial Division also determined that Judge Colclazier was disqualified to hold any future judicial office in Oklahoma.  The instances of conduct were not disputed by the judge.  The judge contended before the Trial Division, as he does on appeal, that these instances of conduct did not constitute "oppression in office" and did not warrant removal.

¶ 2   In 1994, Judge Colclazier was elected as a District Judge in Seminole County.  He was in his second four year term as judge when the conduct complained of in this case occurred, and when he was removed from office by the Trial Division.

¶ 3   The first event listed by the Trial Division occurred when Judge Colclazier observed a locksmith changing the locks on the court clerk's satellite office in Seminole.  The judge's office and court room were also in the same building in Seminole.  When the judge asked the locksmith for a key to the clerk's office, the locksmith refused.  The locksmith

explained that the clerk had asked him to change the locks and give the only keys to one of the clerk's deputies. According to the locksmith, the judge responded that the court clerk was incompetent, schizophrenic, and unfit for her job. The judge threatened the locksmith and told him that he could be jailed for contempt if he did not give the judge a key. The locksmith gave the judge a key.

¶ 4 The second event listed by the Trial Division occurred when a woman appeared in front of the judge seeking an emergency protective order. The woman's face was visibly bruised and she contended that the battery was done four days before by the named defendant. The woman also contended that the defendant had not been arrested for the battery because some of the sheriff's deputies were his friends. The judge issued an emergency protective order. The judge then called the sheriff and expressed his concern that the sheriff's office was not following its mandatory arrest policy in this case. After the call from the judge, the sheriff ordered two of his deputies to serve the emergency protective order on the defendant and to arrest him. The two deputies located the defendant and served the emergency protective order on him. The defendant told the deputies that he did not batter the complainant. The deputies did not believe that they could arrest the defendant without a warrant, so they called Judge Colclazier. Judge Colclazier orally ordered the deputies to arrest the defendant without a warrant and to hold him without bond. After spending about 40 hours in jail without bond, the defendant appeared before Judge Colclazier. After hearing the defendant's testimony, the judge ordered the defendant released on his own recognizance. Charges were never filed against the defendant and he was never prosecuted for the alleged battery.

¶ 5 The third event listed by the Trial Division occurred when Judge Colclazier terminated a criminal defendant from the drug court program and sentenced him to life in prison. The defendant, who had no prior felony convictions, had pled guilty to the charges of possession of marijuana with intent to distribute and unlawful possession of paraphernalia. The defendant appealed, *Cosar v. State*, No. F–99–1652. In an unpublished order, the Court of Criminal Appeals reversed and remanded with specific directions that the matter be heard by a different judge. The Court of Criminal Appeals found that the judge had not followed the proper procedure in terminating the defendant from the drug court program and that the judge improperly relied upon *ex parte* communications and inadmissible polygraph results (which indicated that the defendant might have committed a rape and murder 10 years before) in sentencing this defendant on the drug charges. The Court of Criminal Appeals opined that in sentencing the defendant, the judge had violated Canon 3(B)(6) of the Code of Judicial Conduct, 5 O.S.Supp. 1999, ch. 1, app.4.

¶ 6 The fourth event listed by the Trial Division occurred when a father came to the judge seeking enforcement of a Cleveland County custody modification order. The order gave custody to the father with visitation to the mother. In this *ex parte* communication, the father explained that the mother, who was located in Seminole County with the children, refused to return the children at the end of an agreed upon visitation period. There was no allegation that the children were in any danger. Without the filing of a petition for writ of habeas corpus, or other written request for relief, the judge issued a written "general order," with no case number, directing all law enforcement agencies to assist the father to take physical custody of his minor children. The father presented this order to the local sheriff's deputies who assisted the father in the pick up of his children. When they appeared at the mother's house, she called her attorney who had previously mailed a motion to modify custody to Cleveland County. The attorney called the judge and requested a hearing before the children were removed. The judge refused and the children were removed.

## II. THE STANDARD OF REVIEW

¶ 7 The standard of review in an appeal from a judgment of the Trial Division of the Court on the Judiciary is outlined in the Oklahoma Constitution:

(c) The review in the Appellate Division shall be an equity appeal, as to both law and fact. The Appellate Division may affirm, modify or reverse the judgment of the Trial Division, or enter a new judgment, as justice may require.

(d) If justice requires, the Appellate Division may hear additional evidence upon the appeal, upon a showing to the satisfaction of the Division that the additional evidence is material and that there were good reasons for failure to present it to the Trial Division.

Okla. Const., art. 7–A, § 5(c)—(d). "In cases of equitable cognizance, a judgment will be sustained on appeal unless it is found to be against the clear weight of the evidence or contrary to law or established principles of equity." *Harrell v. Samson Resources Co.,* 1998 OK 69, ¶ *31,* 980 P.2d 99, 107.

### III. THE DEFINITION OF OPPRESSION IN OFFICE

¶ 8 The Oklahoma Constitution, 7–A, § 1(b), lists the causes for the removal of a judge from office that can be considered by the Court on the Judiciary. These causes are gross neglect of duty, corruption in office, habitual drunkenness, commission while in office of any offense involving moral turpitude, gross partiality in office, "oppression in office", or other grounds as may be specified hereafter by the Legislature.

¶ 9 Judge Colclazier correctly points out that "oppression in office" is not defined in the Oklahoma Constitution. The judge contends that "oppression in office" sufficient to justify removal requires proof of illegality, bad faith or improper motive and that there was no such proof in the present case. In the alternative, the judge contends that if "oppression in office" does not require such proof, then the constitutional provision per-

mitting removal for "oppression in office" is void for vagueness.

¶ 10 "Oppression in office" has been defined as the excessive use of authority. *United States v. Deaver,* 14 F. 595, 597 (W.D.N.C.1882); Black's Law Dictionary. The Oklahoma Supreme Court has implicitly recognized that proof of illegality is not necessary in order for a judge to be removed from office for oppression. *State ex rel. Oklahoma Bar Ass'n v. Sullivan,* 1979 OK 1, 596 P.2d 864, and *State ex rel. Bar Ass'n v. Haworth,* 1979 OK 34, 593 P.2d 765.

¶ 11 Although the Oklahoma Court on the Judiciary has not addressed whether bad faith or improper motive is required to find judicial misconduct, other jurisdictions have. The state of Missouri has a constitutional provision [1] similar to Oklahoma's provision, which provides for removal of a judge for "oppression in office." The Supreme Court of Missouri has not required that bad faith or improper motive be shown, but has held that violations of the Code of Judicial Conduct may constitute "oppression in office." *In re Elliston,* 789 S.W.2d 469 (Mo.1990). In Mississippi, it is well settled that willful misconduct that will give rise to judicial discipline need not be the result of bad faith or malice. In *Mississippi Commission on Judicial Performance v. Hartzog,* 646 So.2d 1319 (Miss. 1994), the court held that any knowing misuse of the judicial office, whatever the motive, is misconduct that is prejudicial to the administration of justice and brings disrepute to the judicial office.

¶ 12 We reject the notion that the term "oppression in office," as used in the Okla. Const., art. 7–A, § 1(b), must include either bad faith or improper motive.[2] In our view, a judge is guilty of "oppression in office" when that judge intentionally commits acts which he or she knows, or *should know,* are obviously and seriously wrong under the

1. Missouri Const., art. 5, § 24.3.

2. Judge Colclazier suggests that we adopt the California standards for judicial discipline. In *Dodds v. Commission on Judicial Performance,* 12 Cal.4th 163, 48 Cal.Rptr.2d 106, 906 P.2d 1260 (1995), the court held that to commit willful misconduct in office, a judge must engage in conduct that is unjudicial and committed in bad

faith while acting in a judicial capacity. The California court defined "bad faith" as an intentional commission of acts by a judge which he knew, or should have known, were beyond his lawful power. Thus "bad faith," in this California judicial disciplinary case, could be excessive use of power without regard to evil intent or improper motive.

circumstances and amount to an excessive use of judicial authority.[3] The relevant inquiry is whether the judge formed a specific intent to commit acts with the requisite knowledge that they were obviously and seriously wrong under the circumstances and amounted to excessive use of judicial authority and not whether the judge committed the acts with ill will, evil intent or some other improper motive.

¶13 Having decided that illegality, bad faith or improper motive need not be shown to establish "oppression in office," we examine Judge Colclazier's argument that "oppression in office", as that term is used in Okla. Const., art. 7–A, § 1(b), is void for vagueness.

¶14 A vagueness challenge to a state law under the due process clause is overcome by a showing that a reasonable person would know that his or her conduct is at risk. *Allen v. City of Oklahoma City,* 1998 OK CR 42, 965 P.2d 387. The Oklahoma Code of Judicial Conduct, 5 O.S.2001, ch. 1, app. 4,[4] establishes standards against which judicial conduct is measured.[5] Canon 3(B) offers guidance to judges in the exercise of their adjudicative responsibilities. The requirements of Canon 3(B) have been summarized as follows:

> A judge is required to administer justice through faithful and competent application of the law free of outside influences and by permitting all those interested in a proceeding full right to be heard. A judge violates these provisions if the judge administers justice capriciously or interferes with the rights of others before the court.

Shaman, Lubet and Alfini, *Judicial Conduct and Ethics,* § 2.01 at p. 34 (3d ed.).[6]

**3.** This definition evaluates the judicial conduct under a reasonably prudent judge standard.

**4.** This opinion references the most recent codification unless a different version controls.

**5.** Violations of the Code of Judicial Conduct may also constitute independent grounds for removal in Oklahoma. Art. 7–A, § 1(b) authorizes the Legislature to specify additional grounds for removal of a judicial officer from office. Additional grounds for removal from office are listed in

¶15 In Missouri, violations of the Code of Judicial Conduct were found to constitute "misconduct" or "oppression in office." *In re Elliston, supra.* Similarly, in California, where judges may be disciplined for "willful misconduct," a judge's conduct is measured with reference to the Code of Judicial Conduct. *Dodds v. Commission on Judicial Performance,* 12 Cal.4th 163, 48 Cal.Rptr.2d 106, 906 P.2d 1260, 1266 (1995).

¶16 Chapter 2 of Shaman, Lubet and Alfini, *Judicial Conduct and Ethics,* §§ 2.01, *et seq.,* discusses cases where judges have been disciplined for various abuses of power which also violate Canon 3 of the Code of Judicial Conduct. These abuses include misuse of contempt power, §§ 2.03–2.06; abuse of the adversary process, § 2.07 ("judges abuse the power of judicial office when they abbreviate or change critical aspects of the adversary process in ways that run counter to the scheme established by relevant constitutional and statutory law", at p. 50); and inappropriate criminal sanctions and dispositions, § 2.11.

¶17 Based on the above authorities, we reject Judge Colclazier's argument that the term "oppression in office" as used in Okla. Const., art. 7–A, § 1(b) is void for vagueness. The Code of Judicial Conduct sufficiently defines the conduct regulated and affords an individual fair warning of what conduct is prohibited. *Grayned v. City of Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222 (1972).

¶18 In summary, a judge is guilty of "oppression in office," as that term is used in Okla. Const., art. 7–A, § 1(b), when that judge intentionally commits acts which he or she knows, or should know, are obviously and seriously wrong and amount to an excessive

20 O.S.2001, § 1404, which includes, at § 1404(C), "(v)iolation of the Code of Judicial Conduct as adopted by the Supreme Court of Oklahoma on July 15, 1974, or as may be thereafter amended, ... with or without disqualification to hold a judicial office in the future."

**6.** Although Shaman, Lubet and Alfini refer to the 1990 Model Code, Canon 3(B) in the Model Code and in the Oklahoma Code of Judicial Conduct are similar.

use of judicial authority. While conduct constituting "oppression in office" must be the result of a specific intent to commit the oppressive acts, they need not be criminal, fraudulent, dishonest, or motivated by personal gain. Ample precedents, including the Oklahoma Code of Judicial Conduct, provide sufficient notice of the types of actions which amount to an excessive use of judicial authority. The constitutional term "oppression in office" is not void for vagueness.

¶ 19 Not every violation of the Code of Judicial Conduct will result in a finding of "oppression in office," nor will mere legal error or abuse of discretion result in discipline. We recognize that the fear of jeopardy of punishment has the potential of chilling judicial independence. The preservation of an independent judiciary requires that judges not be exposed to personal discipline on the basis of particular rulings. A balance must be struck between independence and accountability and a line must be drawn between mere legal error correctable by appeal and acts which are obviously and seriously wrong and amount to excessive use of judicial authority.

¶ 20 While the line may not always be clear, Shaman, Lubet and Alfini, *Judicial Conduct and Ethics*, § 2.02, has identified factors which may be considered in determining whether certain actions rise to the level of judicial misconduct. They include the availability of appeal, the nature of the judge's conduct, the extent of the court's jurisdiction, the motive of the judge, the egregiousness of the error, and the frequency of the offending conduct. A pattern of misconduct is certainly more serious than an isolated incident. These factors mediate the sensitive line between judicial misconduct and mere error.

## IV. THE JUDGMENT OF THE TRIAL DIVISION IS NOT CLEARLY CONTRARY TO THE EVIDENCE AND NO ERRORS OF LAW OCCURRED.

¶ 21 Judge Colclazier contended before the Trial Division, and continues to contend on appeal, that he acted lawfully and within his proper authority in all four in-

stances. We reject this contention. We find that in all four instances Judge Colclazier intentionally committed acts which he should have known were obviously and seriously wrong and amounted to an excessive use of judicial authority. In the case of the locksmith, the judge improperly threatened a private citizen with the use of his contempt powers although the refusal to give the judge the key constituted neither direct nor indirect contempt. 21 O.S.2001, § 565. In the victim's protective order case, the judge improperly directed an unauthorized warrantless arrest when the defendant had not violated the protective order, and the abuse had not occurred within 72 hours. 22 O.S.2001, § 40.3. In the drug court case, the judge ignored statutory guidelines for conducting a sentencing hearing by sentencing an individual to a life-term for a first time drug conviction on the basis of unsworn testimony and *ex parte* communications. 22 O.S.2001, §§ 973–975. In the child custody case, the judge engaged in an *ex parte* communication with one party, and intervened without cause in a pending case in another county.

¶ 22 Judge Colclazier, in each instance, showed disregard for the law and the established rules of practice. In the course of his dealings, Judge Colclazier violated several provisions of the Oklahoma Code of Judicial Conduct. Canon 2(A) requires judges to comply with the law and conduct themselves in a manner that promotes public confidence in the judiciary. Canon 3(B)(6) requires judges to accord to every person who has a legal interest in a proceeding the right to be heard according to law. It also prohibits judges from initiating or considering *ex parte* communications made outside the presence of the parties.

¶ 23 Judge Colclazier also argues that the listed instances of conduct should not be grounds for removal because his actions were not appealed, except in the one instance of the drug court sentencing, and any error he may have committed was mere reversible error. The main flaw in this argument is that three of the complainants had no right to appeal Judge Colclazier's actions, because the judge circumvented proper procedure. The instances where he threatened the lock-

smith with contempt, ordered the warrantless arrest of a man accused of domestic abuse where no charges were filed, and ordered the pick up of children under a general order with no case number, were not in connection with any case which would give rise to an appeal. *See, Lowe v. Monard,* 1997 OK 100, 942 P.2d 732.

¶ 24 In addition, while the availability of appeal mitigates against a finding of misconduct, it does not preclude it. A judge's misconduct may be the subject of a disciplinary action even though it may be remedied on appeal because "an individual defendant's vindication of personal rights does not necessarily protect the public from a judge who repeatedly and grossly abuses his power." *People ex rel. Harrod v. Illinois Courts Comm.,* 69 Ill.2d 445, 14 Ill.Dec. 248, 372 N.E.2d 53, 65 (1977), Shaman, Lubet and Alfini, *Judicial Conduct and Ethics,* at § 2.01. Thus, the Trial Division properly considered the instances of conduct in this case.

¶ 25 After applying the factors which may be considered in determining whether certain actions rise to the level of oppression, set forth in Part III above, to the facts of this case, we determine that the judgment of the Trial Division, finding Judge Colclazier committed "oppression in office" is not clearly contrary to the weight of the evidence or legally erroneous.

¶ 26 Judge Colclazier requests that we modify the Trial Division's judgment of removal. Under the circumstances, we find that the judgment is clearly supported by the evidence. The actions of Judge Colclazier in this case bear some similarity, in their excessive use of power, to the actions of other judges in Oklahoma who have been removed from office. In *Sullivan, supra,* the Supreme Court reported that the actions which the Court on the Judiciary found to constitute oppression were (1) the arrest and citation of a bailiff for contempt, (2) the display of partiality in a felony case, in which the judge was abusive to counsel, (3) advice to criminal defendants that the charge carried a penalty in excess of the statutory maximum, and (4) verbal abuse of an attorney for no apparent reason other than personal dislike.

¶ 27 In *Robberson v. Board of Commissioners of Noble County,* 1924 OK 1172, 109 Okla. 249, 235 P. 525, the Supreme Court upheld a judge's removal from office for oppression. In *Robberson,* the judge (1) refused to let a traffic violator pay a fine, and instead, threw him in jail and refused to let him communicate with anyone, and (2) directed a lawyer to get out of his office and angrily shoved him out the door.

¶ 28 In conclusion, the Trial Division's judgment is not against the clear weight of the evidence nor is it contrary to law or established principles of equity. The Trial Division's judgment is affirmed.

¶ 29 ELLIS, V.P.J., WINCHESTER, LUMPKIN, LANNING, LINDLEY, McBEE, and THOMPSON, JJ., concur.

¶ 30 WINSLOW, P.J., recused.