OSCN Found Document:IN THE MATTER OF THE DISCIPLINARY PROCEEDINGS CONCERNING COLEMAN

 

 
 

 
 IN THE MATTER OF THE DISCIPLINARY PROCEEDINGS CONCERNING COLEMAN
2019 OK 77
Case Number: 118450
Decided: 12/03/2019
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2019 OK 77, __ P.3d __

 

NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

IN THE MATTER OF THE DISCIPLINARY PROCEEDINGS CONCERNING KENDRA COLEMAN, DISTRICT JUDGE, OKLAHOMA COUNTY, OKLAHOMA.
ORDER
Â¶1 The Council on Judicial Complaints initiated this case by delivering a report to the Chief Justice concerning the Council's investigation of District Judge Kendra Coleman. The report contained an evidentiary record and Findings of Fact, Conclusions of Law and a Recommendation that the Supreme Court en banc file a petition with the Court on the Judiciary to remove Judge Coleman. Given the fact that two members of the Supreme Court sit on the Appellate Division of the Court on the Judiciary, the Chief Justice appointed Special Justices to serve in their place as well as a Special Justice to serve for a currently vacant office on the Supreme Court. Thereafter, the Supreme Court, thus constituted, reviewed the Council's report and voted 5-4 that the allegations and evidence of misconduct set forth in the report did not warrant the filing of a petition for removal.
Â¶2 The Council on Judicial Complaints plays an important role in protecting and preserving the integrity of the Oklahoma Judiciary. The Council is "an agency in the Executive Department" that independently investigates and evaluates complaints of judicial misconduct. 20 O.S.2011, Â§Â§ 1651 and 1652; Rule 3 of the Rules Governing Complaints on Judicial Misconduct, 5 O.S.2011, Ch.1, App. 4-A.
Â¶3 While the Council can make recommendations concerning the merits of a complaint and the need for disciplinary proceedings, the Council "may not adjudicate any matter nor impose any sanction." Mattingly v. Court on the Judiciary, Trial Division, 2000 OK JUD 1, Â¶17, 8 P.3d 943, 949. Neither can the Council "invoke the jurisdiction of the Court on the Judiciary [nor] substitute its own discretion for that of the officers charged with that duty by the constitution. " Id. Â¶9, 8 P.3d at 947.
Â¶4 This Court and the other officers and entities designated in Article 7-A, Â§ 4 of the Oklahoma Constitution and in 20 O.S.2011, Â§ 1659, are vested with discretionary authority to decide whether the judicial misconduct detailed in a report by the Council warrants proceedings before the Court on the Judiciary. Haworth v. Court on the Judiciary, Trial Division, 1975 OK JUD 1, Â¶6, 684 P.2d 1217, 1218.
Â¶5 This Court exercises this discretionary authority to first determine whether the Council's allegations of misconduct by a judge, even if true, would or would not, call for the judge's removal from office or compulsory retirement. Mattingly, Â¶Â¶ 7 and 19, 8 P.3d at 947, 950. In the case at hand, the majority concluded that the alleged misconduct of Judge Coleman would not call for immediate removal and rejected the Council's recommendation to file a petition for removal. This decision did not end the Court's inquiry, but instead triggered this Court's exclusive jurisdiction to decide discipline for misconduct of a judge not serious enough to require removal or compulsory retirement. Id. Â¶19, 8 P.3d at 950. As explained in the Mattingly case, this Court has exclusive jurisdiction to discipline for non-removal misconduct because "to interpret the powers of the Court on the Judiciary . . . to merely discipline rather than remove a judge, would both grant the Court on the Judiciary powers not given by [the Constitution] and deprive the Supreme Court of its responsibility to exercise 'superintendent control' and 'administrative authority' over the courts of this state mandated by [the Constitution]." Id. Â¶16, 8 P.3d at 949.
Â¶6 This Court exercises its exclusive jurisdiction to determine discipline for non-removal misconduct pursuant to the Rules Governing Complaints on Judicial Misconduct. 5 O.S.2011, Ch. 1, App. 4-A. In the Preface to the Rules, this Court stated it was providing "a uniform process to investigate and administer judicial discipline for misconduct that does not warrant removal from office or compulsory retirement." The Rules are said to provide "a venue for any person to complain about a judge who the person believes has engaged in conduct prejudicial to the effective and expeditious administration of the business of the courts." Rule 1, RGCJM. While this Court utilizes the investigation and screening assistance of the Council on Judicial Complaints pursuant to Rule 3, the Council's Finding of Facts, Conclusions of Law and Recommendation for Discipline are not binding on the Court. Again, the Council may not adjudicate any matter nor impose any sanction." Mattingly, Â¶17, 8 P.3d at 947.
Â¶7 The Rules vest the Chief Justice with responsibility to determine "appropriate action . . . to remedy the problem" and reserve to the Court the power to impose "appropriate discipline." Rule 4(c) and (d), RGCJM. Even though this Court may begin its review of non-removal misconduct under its exclusive jurisdiction, the Chief Justice or the Court can later file a petition for removal in exercise of the authority given by Article 7-A, Â§ 4 of the Constitution, if the Chief Justice or the Court deems such action necessary.
Â¶8 The fact that this Court is divided on the issue of whether a petition for removal should be filed does not mean there is not common concern whether Judge Coleman appreciates the level of conduct expected of every person who aspires to serve as a member of the Oklahoma Judiciary. The majority's conclusion that proceedings for removal are not warranted to address this concern should not be taken to indicate that the majority does not regard this concern to be serious or one that does not require action by this Court. What the majority seeks to achieve by proceeding pursuant to Rule 4 is to impress upon Judge Coleman that future derelictions as recounted in the report of the Council on Judicial Complaints will not be tolerated. The majority also seeks to take steps to ensure Judge Coleman will fully comply with the Code of Judicial Conduct and all personal and professional obligations reflecting on her judicial service.
Â¶9 The allegations and evidence of misconduct set forth in the Council's report can be summarized as follows:

Judge Coleman officially took the bench on January 14, 2019. 
On September 17, 2019, Judge Coleman was indicted on four (4) misdemeanor counts of failing to file a state income tax return in violation of 68 O.S.2011, Â§ 240. A criminal case was filed in Oklahoma County CM-2019-3063. This charge was dismissed when the District Attorney subsequently filed a felony charge relating to the same matter. 
Judge Coleman has delinquent tax assessments to both the IRS and the OTC. 
Judge Coleman has outstanding tax assessments for business personal property taxes owed to Oklahoma County for 2014-2018. 
Between 2012 and 2019 Judge Coleman was issued sixty-five (65) parking tickets by the City of Oklahoma City. Eight of those tickets were accumulated after Coleman was elected to her position but before taking the bench. 
In connection with Judge Coleman's candidacy for district judge, she and/or her candidate committee violated the Code of Judicial Conduct and Oklahoma Ethics Rules concerning election expenditures and reports. 
Judge Coleman violated the Code of Judicial Conduct by failing to disqualify herself in all cases presented by the Oklahoma County District Attorney. 
Judge Coleman engaged in oppressive behavior by utilizing or threatening to utilize her powers of contempt. 
Â¶10 In response, Judge Coleman admitted that there was a factual basis for these allegations, but maintains that she did not intentionally act to violate the Code of Judicial Conduct or to deliberately abuse her judicial power. Judge Coleman also related that she has paid the parking tickets and taken steps to rectify her delinquent tax returns and Ethics Commission reports. She reported that she sought and is receiving mentoring from retired Oklahoma Supreme Court Justice Daniel Boudreau. She is doing this to properly perform her judicial duties and conduct herself in any manner consistent with the high standards required for judicial service.
Â¶11 Of the foregoing only the last three directly relate to Judge Coleman's responsibilities as a judge. As concerns Judge Coleman's decision not to disqualify in all cases presented by the District Attorney, we note that Rule 1 of the Rules Governing Complaints on Judicial Conduct expressly provides that "Appellate review and disqualification procedures exist and should be utilized to address concerns regarding . . . disqualification issues." Also, the procedure for seeking disqualification of a judge - Rule 15, Rules for District Courts, 12 O.S.2011, Ch. 2, App. - does not allow for or even contemplate the wholesale disqualification sought by the District Attorney. Administrative "reassignment" is a preferable alternative. Mattingly, Â¶23, 8 P.3d at 951.
Â¶12 As concerns the issue of oppression in office, the Council's report asserts that Judge Coleman improperly used and threatened to use her contempt powers. The evidence in the record shows that Judge Coleman may not have correctly used direct contempt to deal with a disruptive person in her courtroom, but this matter is the subject of an appeal. Rule 1 also provides that judicial misconduct procedure is not intended to be exercised to challenge a judge's decision in a single case.
Â¶13 Also, the evidence concerning the threatened use of contempt occurred in the course of a heated exchange that Judge Coleman had with the District Attorney and First Assistant that was marked by mutual acrimony. "A judge is guilty of 'oppression in office' when that judge intentionally commits acts which he or she knows, or should know, are obviously and seriously wrong under the circumstances and amount to an excessive use of judicial authority." State v. Colclazier, 2002 OK JUD 1, Â¶12, 106 P.3d 138, 141-2. "The relevant inquiry is whether the judge formed a specific intent to commit the acts with the requisite knowledge that they were obviously and seriously wrong under the circumstances and amounted to excessive use of judicial authority." Id., 106 P.3d at 142.
Â¶14 One of the factors to be considered in determining whether discipline is warranted is "the facts and circumstances that existed at the time of the violation." Scope of the Code of Judicial Conduct, 5 O.S.2011, Ch.1, App. 4. In the instances cited in the Council's report, Judge Coleman was acting to preserve order and decorum, even if she did so incorrectly. It is well settled that "Not every violation of the Code of Judicial Conduct will result in a finding of 'oppression in office,' nor will mere legal error or abuse of discretion result in discipline." Colclazier, Â¶19, 106 P.3d at 143.
Â¶15 Judge Coleman's admitted and unexcused violations of the Ethics Commission rules governing campaign financing and reporting are another matter. These rules protect the integrity of the election process. Compliance with these rules is a duty that every candidate, especially candidates for judicial office, owes to the people and electorate of this state. While Judge Coleman's efforts to rectify her delinquent reports is commendable, they do not relieve her of accountability and discipline for this serious violation of the Code of Judicial Conduct. In order to deter Judge Coleman and future candidates for judicial office from failing to comply with Ethics Commission campaign rules, we hereby Reprimand Judge Coleman for this violation and will make this Reprimand public by publishing this opinion.
Â¶16 Judge Coleman's neglect to pay over sixty parking tickets, and similar neglect to attend to various county, state and federal tax obligations for several years, reflect adversely upon her judicial service, because such neglect raises a reasonable concern that she may likewise neglect her judicial duties. While her belated payment of the parking tickets and recent efforts to rectify her tax delinquencies demonstrate a sense of responsibility to attend to important matters, this Court believes an Admonishment is warranted to impress upon Judge Coleman the imperative of timely addressing all personal legal obligations that arise during or reflect upon her judicial service. As in the case of the Reprimand for failure to timely file Ethics Commission reports, this Admonishment is made public by publication of this order.
Â¶17 The last issue this Court must address is the pending felony charge that arose from Judge Coleman's neglect of her state tax obligations. This Court finds that final discipline should be deferred until this charge is resolved. In the meantime, Judge Coleman is on Probation with conditions (1) to report monthly to the Council on Judicial Complaints concerning the status of the various tax delinquencies, (2) to complete at least five mentoring sessions pending final discipline with Retired Justice Daniel Boudreau, Retired Judge April Sellers White, or another experienced judge and (3) to comply with all local, state and federal laws, and the Code of Judicial Conduct. Failure to comply with these conditions for deferred final discipline can be the basis for additional discipline and the Council on Judicial Complaints is authorized to bring any breach of these conditions to this Court through the complaint process provided by the Rules Governing Complaints on Judicial Misconduct.
Â¶18 RESPONDENT PUBLICLY REPRIMANDED, PUBLICLY ADMONISHED, FINAL DISCIPLINE DEFERRED, PROBATION WITH CONDITIONS
Â¶19 DONE BY ORDER OF THE SUPREME COURT IN CONFERENCE THE 2ND DAY OF DECEMBER, 2019.
/S/CHIEF JUSTICE
Gurich, C.J., Kauger, Edmondson, Colbert, JJ., Reif, S.J., concur;
Winchester (by separate writing), Kane (by separate writing), JJ., Kuehn, S.J. (by separate writing) and Wiseman, S.J., dissent.

WINCHESTER, J., with whom KANE, J. and WISEMAN, S.J., join, dissenting:
Â¶1 The Council on Judicial Complaints thoroughly investigated the numerous allegations of misconduct against Judge Coleman, including a review of all evidence presented and the testimony from several witnesses. The Council found multiple violations of the Code of Judicial Conduct worthy of her removal from office. Pursuant to 20 O.S.2011, Â§ 1658, the Council recommended her removal and referred the matter to this Court for further proceedings.
Â¶2 I would refer this matter to the Court on the Judiciary for trial, which is the appropriate next step given the extensive evidence of the appearance of impropriety. I will not minimize blatant misconduct. While the various alleged infractions might not necessitate removal from office when considered individually, accumulatively they indicate a clear pattern of disrespect for the judicial office. I dissent from the majority's decision today because I believe Judge Coleman's actions warrant a trial on the matter.
Â¶3 In her short time on the bench, a span of less than one year, Judge Coleman has been the subject of numerous reports. The Council heard from several witnesses and reviewed all the evidence submitted, determining that the multiple instances of misconduct required Judge Coleman's removal from office. The Council ultimately found that Judge Coleman lacked the judicial temperament requisite of a judge, was guilty of oppression in office, and failed to follow the law and appreciate the importance of a fair and impartial judiciary.
Â¶4 If found to be true, the accumulation and sheer numerosity of the allegations against her reflect a pattern of lack of integrity or respect for the law. The majority's decision shields Judge Coleman's actions from review by her peers and erodes the confidence of her fellow judges and the public in the judicial system's willingness to discipline its own members. Accordingly, I dissent.

Kane, J., with whom Wiseman, S.J. joins, dissenting:
Â¶1 The Council on Judicial Complaints ("the Council") has submitted a recommendation for the Supreme Court to file a Petition to convene the trial division of the Court on the Judiciary ("the Court on the Judiciary") regarding allegations against the respondent judge. A majority of this Court concludes that a more proper exercise of our discretion in this matter would be to divert the subject of the proceedings from the statutory and constitutional processes in place, and proceed, instead, with an ad hoc Order, tailored to the responding judge, based upon the alleged facts suggested in the Council's report, without the benefit of a trial.
Â¶2 While I believe that this Court does have the power to undertake relief in the nature proposed by the majority, I do not believe that this exercise of power has precedence, and I further do not believe that it is a wise or warranted exercise of our power under the facts presented in this case. I believe that a Petition, based upon the concerns expressed by the Council on Judicial Complaints' report, should have been prepared and presented to the Court on the Judiciary for a trial. I therefore dissent.
CONSTITUTIONAL ORIGINS AND FUNCTION OF THE COURT ON THE JUDICIARY
Â¶3 The Court on the Judiciary is a Constitutional entity. Article VIIA, Â§2 of the Oklahoma Constitution provides, in part, that the trial division "is vested, subject to the provisions of this Article, with sole and exclusive jurisdiction to hear and determine causes arising thereunder." Article VIIA, Â§1 of the Oklahoma Constitution provides that the Court on the Judiciary will hear all Petitions for removal, and that:
Cause for removal from office shall be: Gross neglect of duty; corruption in office; habitual drunkenness; commission while in office of any offense involving moral turpitude; gross partiality in office; oppression in office; or other grounds as may be specified hereafter by the legislature. 
Okla. Const. art. VIIA, Â§1(b). The Court on the Judiciary receives Petitions against judges, based upon investigations undertaken by the Council on Judicial Complaints.
STATUTORY ORIGINS AND FUNCTION OF THE COUNCIL ON JUDICIAL COMPLAINTS
Â¶4 The Council on Judicial Complaints was created by statute
[1] in 1974. The Council stands as an executive agency that can receive and investigate complaints against judges and, thereafter, determine whether such judges should "be made the subject of action before the Court on the Judiciary for the purpose of removal, reprimand or admonition, or . . . be dismissed."[2] Upon a finding that a Petition for removal ought to be filed against a judge, the Council has the option of presenting the request to this Court, so that this Court might file a Petition for removal against the responding judge with the Court on the Judiciary. See 20 O.S.2011 Â§1659. As stated above, the Council did, in fact, make such a request to the Court in this matter.
CONSTITUTIONAL RIGHT OF THIS COURT TO ACT
Â¶5 Title 20, Â§1659 appears to suggest that once this Court is in receipt of such a recommendation from the Council, it has a non-discretionary mandatory duty to immediately file a Petition with the Oklahoma Court on the Judiciary.
[3] However, in Haworth v. Court on the Judiciary, Trial Division, 1975 OK JUD 1, 684 P.2d 1217, it was determined that Â§1659 was unconstitutional in purporting to convert a constitutionally created discretionary duty into a legislatively created mandatory duty. Thus, upon receipt of a report from the Council, this Court must exercise its Constitutional discretion to determine whether or not to file the Petition with the Court on the Judiciary.
ANALYSIS OF THE MAJORITY'S CONCLUSIONS
Â¶6 The majority concludes, before a Petition has been filed or a trial commenced, that the violations alleged in the Council's report could not possibly result in the removal of the judge. Specifically the majority makes the finding that the allegations do not "warrant the filing of a petition for removal." I take issue with the proposition that a case for removal is impossible to make. Justice Winchester addressed this and strongly disagreed with the majority's assessment in his dissent, and I join him in dissenting. Perhaps the responding judge has committed removable offenses, and perhaps the judge has not--but it is imprudent for us to decide that question without a trial, based merely on the report and briefs. In this case, the Court has, in effect, sua sponte granted a directed verdict against the Council's "removal" request, granted a directed verdict in favor of the proposition that sanctions are warranted, and deferred the balance of the proposed Petition until other related proceedings have concluded.
Â¶7 Upon concluding that the requested Petition for removal is not warranted, the majority invokes Mattingly v. Court on Judiciary, Trial Division, 2000 OK JUD 1, 8 P.3d 943, in support of the proposition that the pursuit of claims for relief seeking less-than-removal from office cannot advance before the Court on the Judiciary. Finally, the majority cites the Preface to the Rules Governing Complaints on Judicial Misconduct, 5 O.S.2011, Ch. 1, App. 4-A, in support of the proposition that this Court has exclusive jurisdiction for judicial misconduct offenses that fall below the "removal from office" standard.
Â¶8 My concern is that I believe that the Court is prematurely exercising jurisdiction in this matter based upon the misplaced concern that the Court on the Judiciary would lack power to take corrective action if a removal case were presented to them and found to fall short of removal. While I agree with the majority's citation to Mattingly as the applicable law, and I further agree that a Petition to the Court on the Judiciary expressly seeking relief less than removal is void for want of jurisdiction, these are not the facts in the present case. Mattingly only stands for the proposition that the Court on the Judiciary lacks jurisdiction to impose lesser sanctions if the Petition expressly does not seek removal of the responding judge:
In State ex rel. Simms v. McCallister, 1986 OK JUD 1, 721 P.2d 427, we affirmed the imposition of a four-month suspension on a judge by the Trial Division. The Attorney General argued before the Trial Division in this matter that McCallister stands for the proposition that the Court on the Judiciary has jurisdiction to impose sanctions other than removal or compulsory retirement. McCallister, however, is inapposite here as the Trial Division in that case found, with ample record support, that the judge's conduct "constitute[s] oppression in office." Further, the petitioner in McCallister had sought the judge's removal from office. Thus, in McCallister, unlike this matter, the Court on the Judiciary's jurisdiction was properly invoked because the petitioner sought the judge's removal and alleged facts to support its allegations.
Mattingly, 2000 OK JUD 1, Â¶20 (emphasis added).
Â¶9 The present case is thus not consistent with Mattingly (wherein removal was not alleged or even requested in the Trial Division), but it is on all fours with McCallister, wherein removal was requested and a lesser sanction was approved after a trial had been conducted by the Court on the Judiciary. As to the reference to "ample evidence" against the responding judge, it is premature to ascertain whether a trial in this case would have had "ample evidence" of wrongful conduct, since the majority is unfortunately truncating the matter prior to the preparation and conduct of a proper trial.
Â¶10 We have stretched construction of Mattingly beyond the breaking point if we read it to say that the Court on the Judiciary is utterly powerless to act if removal from office is requested by the Council, but the Supreme Court elects to weigh the evidence prior to trial on the merits and conclude that the evidence will not justify removal of the Judge by the Court on the Judiciary. The reasoning in Mattingly clarifies the teachings of McCallister-- where removal is requested and is a legitimate potential consequence of the request, it properly proceeds forward by Petition. Upon presentation to the Court on the Judiciary, that body may either grant the request for removal, impose some intermediate sanction, or deny the request entirely and dismiss the Petition. Mattingly did not overrule McCallister-- it was factually and legally distinguishable, and it very clearly left intact the teachings of McCallister.
Â¶11 As to the Court's citation to the Preface to the Rules Governing Complaints on Judicial Misconduct,[4] please note that Rule 3 provides:
If, after an investigation, the Council on Judicial Complaints finds evidence of misconduct that does not warrant removal from office or compulsory retirement, they may refer the matter to the Chief Justice for review.
Rule 3, Rules Governing Complaints on Judicial Misconduct, 5 O.S.2011, Ch. 1, App. 4-A (emphasis added). Let the record be perfectly clear, the Council did not make a request to this Court for punishment of less-than-removal in the present case. The decision of this Court to refrain from presenting this matter to the Court on the Judiciary was not because of any request of the Council. Rather, this Court elected to pursue the present course in spite of the Council's express request that a Petition for removal of the judge should be filed with the Court on the Judiciary.[5] 

CONSEQUENCES OF THE MAJORITY'S DECISION
A. A Trial with All Accompanying Discovery and Due Process Protections will not happen.
Â¶12 (1) The Responding Judge is deprived of a trial. While the majority may conclude that the allegations forwarded by the Council on Judicial Complaints do not qualify as "removable" offenses, the result of this conclusion is that the responding judge is forever procedurally deprived of the opportunity to have a trial before the Court on the Judiciary to prove that the offenses alleged are either untrue, or are unworthy of any punishment.
Â¶13 (2) The Public is deprived of a trial. Conversely, if the allegations against the judge are capable of being proven, and the prosecution were to be able to meet its burden of proof as to any oppressive, corrupt, or wrongful intent, then the public is deprived of the opportunity of being protected by having such conduct promptly adjudicated.
Â¶14 (3) Both sides have lost the procedural mechanisms (before and during trial) which are designed into our existing system. As of this moment, no finder of fact has taken testimony and weighed conflicting factual positions. We have had no pre-trial discovery and no trial preparation in which evidence is obtain, sifted, and evaluated by the interested parties.[6] We cannot yet fully know how innocuous or culpable the facts of this case may eventually prove to be. I see no reason to prevent the process from fully and fairly distilling the truth. While I do commend the Council on Judicial Complaints for a thorough and exhaustive investigation, an investigation is not a trial, and the Council's report was premised upon the expectation that a trial would shortly ensue. The judge was granted an opportunity to file a response to the Council's recommendation prior to this Court's exercise of jurisdiction, but the trading of briefs is simply not the crucible of truth found in an actual trial.

B. The proper way forward has been made ambiguous for the Council on Judicial Complaints in future cases wherein misconduct is suspected.
Â¶15 In the present case, the Court has concluded that the Council on Judicial Complaints failed to measure the alleged offenses properly in submitting a removal request. Without a clear delineation of how the report was deficient in setting forth facts that may justify removal, the Council is left without a proper way to measure future cases.
CONCLUSION
Â¶16 I have every confidence that the majority is proceeding in a fashion that they have concluded in good faith will best protect the public, fairly protect the rights of the accused, and uphold the independence and integrity of our branch of government. However, for the reasons stated above, I believe that the majority has failed to determine and follow the clear and best way forward. The Court is conflating a preliminary conclusion of what a just result may end up being (intermediate sanctions) with a properly requested potential just result (removal). We cannot truly know where justice lies until the case is tried. The complaint clearly sets forth facts that would leave open the legitimate possibility of either removal and/or lesser sanctions and/or exoneration. The Trial Division of the Court on the Judiciary is a Constitutionally created and empowered body ready, willing and able to adjudicate this case upon receipt of a Petition from this Court--this is their job, not ours.
Â¶17 A case may someday come before us wherein we rightfully have need to assume original jurisdiction and implement discipline outside the stricture of the Court on the Judiciary after receipt of a report from the Council--but this is not that case. The Council on Judicial Complaints has properly and diligently discharged its duty and presented its recommendation to this Court. In my view, having reviewed the Council's recommendation and having carefully considered the Council's report, the applicable statutes, case law, and Constitutional provisions, and submissions of the interested parties, I believe that we should now do our duty--we should file the Petition.
Â¶18 I dissent.
FOOTNOTES
[1] Laws 1974, SB 480, c. 251, Â§ 1, et seq., emerg. eff. May 23, 1974, as thereafter amended.
[2] 20 O.S.2011 Â§1651.
[3] Section 1659 dictates that the statutorily authorized body receiving the complaint "shall promptly file a petition invoking the jurisdiction of the trial division of the Court on the Judiciary in accordance with subsection (a) Section 4 of Article 7-A of the Constitution of Oklahoma." 20 O.S. Â§1659 (emphasis added).
[4] Invoked in support of the proposition that this Court has exclusive jurisdiction to determine discipline for "non-removal" classes of judicial misconduct.
[5] The Court certainly has the power to undertake their proposed action in contravention of the Council's express wishes, following the Council's careful investigation--but it bears pointing out that this is what is happening.
[6] Article VIIA, Â§3(c) of the Oklahoma Constitution provides:
In the exercise of its jurisdiction, the Court is vested with full judicial power and authority, including the power to summon witnesses to appear and testify under oath and to compel the production of books, papers, documents, records and other evidential objects; to issue all manner of judicial and remedial process and writs, legal or equitable; to provide for discovery procedures in advance of trial; to make rules governing procedure; to grant full immunity from prosecution or punishment when deemed necessary and proper in order to compel the giving of testimony under oath or the production of books, papers, documents, records or other evidential objects. The specific enumeration of powers herein shall not derogate from the existence of other judicial power and authority in the Court, or from the exercise thereof in aid of its jurisdiction.

Kuehn, S.J., with whom Kane, J., and Wiseman, S.J., join, dissenting:
While I agree with the Majority that the Supreme Court has the jurisdiction to refer this matter to the Court on the Judiciary or retain it, based on the referral by the Council on Judicial Complaints, I part from the decision to retain it. I respectfully dissent.
By retaining this case the Supreme Court is determining, without a full hearing on the merits, that Judge Coleman has violated the Code of Judicial Conduct and committed the offense of oppression in office, a constitutional violation. Given the number and nature of the allegations, I find this unfair to both Judge Coleman and the people of the State of Oklahoma. I believe the best course is to refer this case to the Court on the Judiciary to determine, after a full hearing, what violations occurred and what punishment, if any, should be imposed as a result. I agree with the Majority that not every referral warrants this procedure, and emphasize that my decision rests on the particular circumstances of this matter.
If this matter is referred to the Court on the Judiciary, that court may independently reach its own conclusions on the merits and has the authority to fashion appropriate remedies beyond removal or dismissal. No statute or rule requires the Court on the Judiciary to remove a respondent who has been recommended for removal by the Council. Title 20, Section 1651(2)(a) explicitly says that referral to the Court on the Judiciary is for the "purpose of removal, reprimand, or admonition." This plain language suggests the Court has the authority to impose a variety of punishments. And in fact, the Court has done so. In State ex rel. Simms v. McCallister, the Court on the Judiciary agreed the judge had committed oppression of office, rejected the recommended remedy of removal, and imposed a four-month suspension from office without pay; that punishment was upheld on appeal. 1986 OK JUD 1, 721 P.2d 427. In a later case, the Appeals Division found that, where the offense alleged was not serious enough to require removal or compulsory retirement, the Court on the Judiciary lacked "jurisdiction to reprimand, or discipline in any other way." Mattingly v. Court on Judiciary, Trial Div., 2000 OK JUD 1Â¶ 19, 8 P.3d 943, 950. This language supports my conclusion that, in an appropriate case, the Court on the Judiciary has the authority to fashion appropriate remedies beyond removal or compulsory retirement.
I would afford Judge Coleman the opportunity for a trial by her peers, as contemplated by statute. I respectfully dissent.